# EXHIBIT B

FILED
Superior Court of California
County of Los Angeles

OCT 06 2017

Sherri R. Carter, Executive Officer/Clerk
By_____Deputy
Maria Frances Lopez

*Superior Court of California*

*County of Los Angeles*

*Department 50*

| | |
|---|---|
| MARK KOLOKOTRONES, et al. | Case No.: BC 609689 |
| Plaintiffs, | Hearing Date: October 3, 2017 |
| vs. | Hearing Time: 8:30 a.m. |
| | **ORDER RE:** |
| NINJA METRICS, INC., et al. | A. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION |
| Defendants. | B. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION |
| AND RELATED CROSS-COMPLAINT | |

*Background*

Plaintiffs Mark Kolokotrones ("Kolokotrones") and Knight and Bishop, L.P. ("K&B") (jointly, "Plaintiffs") filed this action on February 8, 2016 against Defendants Ninja Metrics, Inc. ("NM"); Dmitri Williams; Yuri Pikover; Robert Hawk; and 37 Technology Ventures, LLC. NM is currently in bankruptcy proceedings; accordingly, these motions are being litigated and determined solely between Plaintiffs on the one hand and Dmitri Williams, Yuri Pikover, Robert Hawk, and 37 Technology Ventures, LLC, on the other (collectively, "Defendants"). Plaintiffs filed the operative First Amended Complaint ("FAC") on March 23, 2016.

1

This action arises out of the removal of Kolokotrones from the Board of Directors of NM, a startup company incorporated in Delaware and based in Los Angeles County. Kolokotrones is the co-founder of K&B, a minority stockholder of NM. The Defendants include Ninja Metric's other board members, its current Chief Executive Officer, and owners of its preferred stock. Plaintiffs allege that Defendants perpetrated a scheme to remove Kolokotrones as a director of NM's Board (the "Board") and freeze Plaintiffs out of their rights to oversee management and protect their investment. In doing so, Defendants violated the Amended and Restated Voting Rights Agreement ("Voting Agreement") signed by the Defendants and Plaintiffs. Plaintiffs initially brought nine causes of action, but on January 17, 2017, dismissed their second, third, fifth, seventh, and ninth causes of action for fraud in the inducement, negligent misrepresentation, breach of Amended and Restated Investors' Rights Agreement, violation of Cal. Corp. Code §§25401, 25504, and 25504.1, and breach of fiduciary duties, respectively.

On March 15, 2016, Defendants filed a First Amended Cross-Complaint ("FAXC") against Plaintiffs which asserted one cause of action for breach of fiduciary duty.

There are now two motions before the Court. Plaintiffs initially brought their motion for summary judgment/adjudication as to the sole cause of action of the FAXC, and on their first, fourth, sixth, and eighth causes of action for (1) declaratory relief, (2) breach of Amended and Restated Voting Agreement, (3) breach of Board Observer Agreement, and (4) violation of Cal. Penal Code §637.2, respectively. Defendants moved for summary judgment/adjudication as to the same causes of Plaintiff's FAC, as well as to Plaintiff's prayer for punitive damages.

Since the initial round of briefing and rulings on the parties' evidentiary objections, the FAXC has been dismissed, Plaintiffs have withdrawn their motion as to all causes of action except the FAC's declaratory relief claim, and Defendants have withdrawn their motion as to Plaintiffs' prayer for punitive damages.

There is considerable overlap between Plaintiffs' and Defendants' motions. Accordingly, the Court will discuss both motions together and distinguish its rulings where appropriate.

***Evidentiary Rulings***

All evidentiary objections have been ruled upon, as contained within the Ruling Sheet filed on August 22, 2017. Where a specific objection is relevant to the discussion, it will be incorporated as such below.

***Legal Standard***

"[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (CCP §437c (c).) The moving party bears the initial burden of production to make a prima facie showing that there are no triable issues of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) If the moving party carries this burden, the burden shifts to the opposing party to make a prima facie showing that a triable issue of material fact exists. (*Id.*) Courts "liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 389.)

A. <u>Declaratory Relief</u>

"The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79.) The complaint will be found sufficient if it sets forth facts showing the existence of an actual controversy relating to the parties' legal rights and duties, and requests the court to adjudge these rights and duties. (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 606.)

Here, K&B's declaratory relief cause of action seeks a declaration as follows: "(a) Defendants' actions to remove Kolokotrones from the Board were invalid and ineffective; (b) Kolokotrones remains a member of the Board unless the vacancy created by his removal is filled by K&B; (c) Defendants' actions to interfere with the appointment of Wisch to the Board as K&B's designee are a breach of the Amended and Restated Voting Agreement; and (d) any purported actions by the Board while improperly excluding Kolokotrones or Wisch as director are void and/or voidable." (FAC ¶71.)

3

Defendants first argue that the declaratory relief claim is improper to the extent that it seeks a declaration of past wrongdoings rather than prospective relief.

CCP §1060 provides in part:

> Any person interested under a written instrument ... or under a contract, or who desires a declaration of his or her rights or duties with respect to another ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties ... including a determination of any question of construction or validity arising under the instrument or contract.

Defendants argue that declaratory relief is not proper in this action because the facts alleged by Plaintiff do not seek prospective relief. Defendants cite *Babb v. Superior Court* (1971) 3 Cal.3d 841, 848, which states: "Declaratory procedure operates prospectively, and not merely for the redress of past wrongs." (Internal brackets omitted.)

In this case, Plaintiffs are not merely seeking redress for past wrongs. Instead, they seek to invalidate the *current situation* in which Kolokotrones is not a director. The FAC states: "An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning whether Kolokotrones was wrongfully removed as a director of the Company," and "[a] judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights and duties. Without the Court's intervention, Defendants will continue to operate the Company without a validly constituted board of directors, and Plaintiffs will be denied their rights." (FAC ¶¶ 65, 72.)

Even if the relief sought will partly redress past wrongs, this is not grounds for denying declaratory relief. (*See Travers v. Louden* (1967) 254 Cal.App.2d 926, 931-932 ("The fact that the procedure operates prospectively does not create a conflict with the established principle that redress for past wrongs may be had in a proper action for declaratory relief.").) In *Travers*, the court noted that declaratory relief was proper to redress past breaches of contract provided that the contracts "had some time to run and there was need for a declaration as to the future conduct of the parties thereunder." (*Id.* at 932.) Here, Plaintiffs are clearly seeking a declaration regarding

4

their *present rights*, which were *affected* by alleged past wrongs, so that all parties can proceed prospectively in light of Plaintiffs' present rights. Those rights, Plaintiffs allege, are to have Kolokotrones as a member on the Board as per the Voting Agreement.

Moreover, "[t]he mere circumstance that another remedy is available is an insufficient ground for refusing declaratory relief, and doubts regarding the propriety of an action for declaratory relief pursuant to Code of Civil Procedure section 1060 generally are resolved in favor of granting relief." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 433.) Accordingly, even if Plaintiffs are concurrently seeking damages for the alleged wrongful removal of Kolokotrones, that circumstance does not render their declaratory relief action improper. In fact, the declaration they seek relates to an intangible benefit that damages cannot replace. Therefore, declaratory relief has an independent, and likely, more important value to Plaintiffs in this action.[1]

---

[1] At the hearing on this motion, Defendants asked the Court to reconsider their argument which appears at pages 5-6 of their Opposition to K&B's Motion for Summary Adjudication (Second Round Brief) (the "Opposition") regarding the cases of *Hood v Superior Court* (1995) 33 Cal. App. 4th 319 ("*Hood*") and *Paramount Petroleum Corp. v Superior Court* (2014) 227 Cal. App. 4th 226 ("*Paramount*"). Defendants assert that these two cases support their contention that the request of Plaintiffs to have the Court declare the removal of Kolokotrones invalid is "merely a restatement of the liability portion of [the] contract claim as declaratory relief," and for that reason, it is disallowed. (P. 5, ll. 21-23.)

Plaintiffs, on the other hand, asked the Court to reconsider their argument at pages 2 and 4-6 of their Reply to the Opposition regarding the case of *Southern Cal. Edison Co. v Superior Court* (1995) 37 Cal. App. 4th 839 ("*Edison*"). Plaintiffs contend that the *Edison* case has made clear that "*Hood* does not stand for the proposition the trial court cannot grant summary adjudication of a properly pled cause of action for declaratory relief merely because the controversy between the parties spills over into other causes of action. . ... *The fact the same issue of contract interpretation is also raised in other causes of action does not in itself bar declaratory relief or summary adjudication of that cause of action. Under section 1060, the plaintiff 'may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time.' Furthermore, section 1062 provides the remedy of declaratory relief is 'cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action . . ..'*"

The Court has reconsidered the three cases and finds that *Edison* rather than *Hood* or *Paramount* applies to the circumstances of this case. Plaintiffs are not precluded from seeking summary adjudication of their declaratory relief cause of action just because that cause of action overlaps with the breach of contract cause of action; the declaratory relief cause of action seeks a

5

Defendants also argue declaratory relief is inappropriate because Plaintiffs' requests concerning the period between Kolokotrones's removal and Wisch's appointment are moot. However, Defendants solely focus on subparagraphs b and c of paragraph 71 of the FAC; there are additional requests Plaintiffs make, primarily, that the Court declare the removal of Kolokotrones to be invalid, which are not made moot by the placement of Wisch on the Board.

Declaring the removal of Kolokotrones invalid would also not implicate NM, which is in bankruptcy, as Defendants argue that it would. Although they argue that, in the event declaratory relief is granted to Plaintiffs, NM would have to take corporate action to remove Wisch and reinstate Kolokotrones, this is not the case, as the provisions which govern the composition of the Board and removal of directors are set forth in the Voting Agreement which provides for stockholder action by way of voting and executing of the requisite written consents. (*See* McCarthy Decl. in support of Pl's Mtn. for Summ. Jdgmt., Exh. 5, ¶¶ 1.2, 1.4.)

Plaintiffs' claim for declaratory relief also is not subject to the exclusive purview of the Delaware Court of Chancery. As discussed by Plaintiffs, the Voting Agreement expressly provides that all disputes arising out of that agreement must be brought in California. (*Id.* ¶ 5.16.)

Defendants finally argue that Plaintiffs cannot improperly change what declaratory relief they are seeking in this latest round of briefs. They argue that in the first round of briefs Plaintiffs sought Kolokotrones be placed on the board in a nonvoting observer capacity, not as a director. Defendants contend that Plaintiffs' FAC does not reflect what they sought in the Complaint; namely, a declaration that Kolokotrones is a member of the Board, and all actions taken in his absence were void and/or voidable. (Compl. ¶ 63(b), (c).)

The Court does not find Plaintiffs to have impermissibly changed their request for relief. The operative FAC and first round of briefs are not inconsistent in that the FAC seeks a

---

very necessary declaration of the rights and duties of the parties under the Voting Agreement which will affect the course of conduct of the parties to the Voting Agreement in the future. That declaration has been at the heart of this case since its inception. It was not brought as a ruse to simply extract a ruling on liability without adjudication of the full contract cause of action.

declaration that Kolokotrones's removal was invalid and ineffective (FAC ¶ 71(a)) and the first brief seeks a declaration that Kolokotrones was removed without cause or proper notice. (Pl's Mtn. for Summ. Jdgmt. p. 14, ll. 21-23.) Since the first round of briefs, the Court sought clarification from Plaintiffs as to what relief they sought, and in response to the Court's request, Plaintiffs clarified in their second round brief that they seek a declaration that "(1) Kolokotrones's removal from the NM Board was without cause and procedurally defective, and (2) KB is entitled to designate Kolokotrones to serve on the NM Board, and the non-debtor defendants are required to vote to elect him to the Board as KB's designee." (Pl's Supp. Brief in support of Mtn. for Summ. Jdgmt. p. 6, ll. 11-17.) It has been clear from the start of these proceedings and the injunctive relief sought by Plaintiffs early on, that their goal is to undo the actions that they allege wrongfully caused Kolokotrones to be removed from the Board. Such a declaration would comport with Delaware authority which has found that, where the removal of a director is invalid, that individual continues as a director. (*See Hockessin Cmty. Ctr., Inc. v. Swift* (2012) 59 A.3d 437, 463-464 ("On the invalid side of the ledger, the Board also purported to remove Cammock as a director . . . . [A] director only can be removed for cause after being given notice of the charges and an opportunity to be heard. Cammock was not provided with those procedural protections. Consequently, although validly removed as President, Cammock continues as a director." (Citations omitted.)) Additionally, it appears that Plaintiffs have abandoned their request to have the Court declare that Kolokotrones must be placed on the Board as a nonvoting observer because the individual shareholders are not parties to the Board Observer Agreement (*see* McCarthy Decl., Exh. 8), and NM is in bankruptcy.

    1. *Cause for Removal*

Turning to the merits of Plaintiffs' claim, Plaintiffs first argue that Kolokotrones's removal was without cause, in violation of the Voting Agreement and Delaware law. There is no dispute between the parties that cause was required to remove Kolokotrones. Defendants claim that they had cause to remove Kolokotrones, Plaintiffs argue that they did not. There is

surprisingly little Delaware authority on what constitutes "cause" for removal of a director from a corporate board. For this reason, the Court finds *Campbell v. Loew's, Inc.* (1957) 36 Del.Ch.563 ("*Campbell*") controlling, and *Rohe v. Reliance Training Network, Inc.* (2000) 2000 WL 1038190 ("*Rohe*")[2], persuasive. Although Defendants argue against the interpretation given to "cause" in these authorities, they give no alternative other than the "plain meaning" in light of the parties' intent. They argue that the parties' intent was clearly to include the conduct of Koloktrones complained of in this case. However, Defendants provide no admissible evidence of the parties' intent. Therefore, the Court finds it appropriate to look to *Campbell* and *Rohe* for guidance.

The court in *Campbell* found that "a charge that the directors desired to take over control of the corporation is not a reason for their ouster" nor is "lack of cooperation." (36 Del.Ch. 563, 576-577.) On the other hand, the court found that, although a director can "examine books, ask questions, etc. in the discharge of his duty . . . a point can be reached when his actions exceed the call of duty and become deliberately obstructive. In such a situation, if his actions constitute a real burden on the corporation," then relief may be warranted. (*Id.* at 577.) In *Campbell*, the directors "bombard[ed] [the president] with correspondence containing unfounded charges and other similar acts; . . . moved into the company's building, accompanied by lawyers and accountants and immediately proceeded upon a planned scheme of harassment. They called for many records, some going back twenty years, and were rude to the personnel. Tomlinson sent daily letters to the directors making serious charges directly and by means of innuendos and misinterpretations." (*Id.* at 576.) The *Campbell* court concluded "that the charge of 'a planned scheme of harassment'. . . constitutes a justifiable basis for removing a director." (*Id.* at 577.)

---

[2] The parties do not dispute that "Delaware rules allow citation to unpublished cases from the Delaware Court of Chancery and Delaware Superior Court." *LocusPoint Networks, LLC v. D. T. V LLC*, No. 14-cv- 01278-JSC, 2015 U.S. Dist. LEXIS 113356, at *25 n.9 (N.D. Cal. Aug. 25, 2015)); *accord First Marblehead Corp. v. House*, 473 F.3d 1, 8 n.7 (2006) ("We note that Delaware permits the citation of unpublished decisions as precedent."). See also *Lebrilla v. Farmers Grp., Inc.*, 119 Cal. App. 4th 1070, 1077 (2004) ("Opinions from other jurisdictions can be cited without regard to their publication status.")

The court in *Rohe* provides further clarification of what constitutes cause: "Generally, the following have been held to constitute cause for removal: malfeasance in office, gross misconduct or neglect, false or fraudulent misrepresentation inducing the director's appointment, willful conversion of corporate funds, a breach of the obligation to make full disclosure, incompetency, gross inefficiency, and moral turpitude." (2000 WL 1038190 at *3, fn. 6 citing The Delaware Law of Corporations & Business Organizations treatise.) The *Rohe* court noted that if proven true, allegations that the removed directors "used company credit cards to finance purely personal expenditures; [they gave] themselves, friends and family members improper raises and bonuses, and [one of them] had attempted to usurp business opportunities belonging to [the company]." (*Id.* at 3.)

Defendants argue that Kolokotrones "behaved erratically at board meetings," (AUMF 5), causing the board meetings to stop being held as they were unproductive (AUMF 6), proposed financing terms involving "the replacement of board members with members of his family" (AUMF 8), refused to help with sales (AUMF 9), threatened litigation (AUMF 10), being the only director voting against the other directors (AUMF 13), made numerous document requests to the company costing NM "over $60,000 and hundreds of hours of staff time" (AUMF 14), used his knowledge of Russ Harvey's departure to "woo Harvey for his own company" (AUMF 15), resisted the approach of the other board members to obtain consents from shareholders to waive their 20-day notice rights, (AUMF 18-19), and finally offered to buy NM for a small fraction of its valuation price. (AUMF 21.) However, nearly all of the substance of the evidence presented in support of these contentions has been deemed inadmissible as not supported with foundation or as impermissible opinion. Of these allegations, all that remains as admissible evidence is that:

- Kolokotrones submitted a term sheet removing board members in favor of his family; (D. Williams Decl. ¶5)
- Kolokotrones behaved erratically at meetings; (*Id.* ¶ 25)

9

- Meetings ceased occurring as frequently as they used to because they became uncomfortable; (*Id.* ¶ 25)
- Kolokotrones refused to help with sales; (*Id.* ¶ 23)
- Kolokotrones "consistently peppered [NM] with requests for documents," on which the Company spent $60,000; (*Id.*, D. Williams Depo, p.395, l.7- p. 396, l. 5)
- Kolokotrones hired Harvey without communicating it to the Board; (D. Williams Decl. ¶¶ 12-13, D. Williams Depo. p.34, l.6 – p.36, l.3.)
- Kolokotrones voted against the shareholder 20-day notice waiver; (D. Williams Decl. ¶ 20)
- Kolokotrones offered to buy NM for $500,000. (*Id.* ¶ 21.)

As pointed out by Plaintiffs, there is no admissible evidence that Kolokotrones's behavior at the meetings caused them to be so disruptive as to impede the functioning of NM. Defendants also do not present authority that a board director must help with sales or other functions they argue Kolokotrones was supposed to perform. There was no evidence presented by Defendants that any of the remaining actions constitute "gross misconduct" or "malfeasance" or even disruption as was the case in *Campbell*. Accordingly, the Court finds that there is inadequate evidence that Kolokotrones was removed for cause.

### 2. *Removal Process*

Even had there been cause for Kolokotrones's removal, Plaintiffs argue that there was inadequate process with regard to his removal. Defendants argue that the Voting Agreement did not provide for any particular process for Kolokotrones's removal, and, accordingly, pursuant to Delaware law, no process was required. Defendants further argue that, because the Voting Agreement did not provide for a process, any dispute regarding such process should have been brought in the Delaware Chancery Court. Defendants finally argue that there are triable issues as to whether Kolokotrones received adequate notice and opportunity to be heard.

10

Plaintiffs, on the other hand, argue that *Campbell* remains good law insofar as it recognizes that, where removal for cause is required contractually, procedural safeguards must be observed. Indeed, the court in *Campbell* states that "when the shareholders attempt to remove a director for cause, . . . there must be the service of specific charges, adequate notice and full opportunity of meeting the accusation." (36 Del.Ch. 563, 575 (internal quotations omitted); *see also Hockessin Cmty. Ctr., Inc. v. Swift, supra.*) Here, as Plaintiffs point out, it is not materially disputed that NM solicited shareholder consents to Kolokotrones's removal via email without prior notice to Plaintiffs of the email, (Pl's Reply SS ("PRSS") 24) nor is it disputed that the email did not detail the specific charges levied against Kolokotrones, thus informing Kolokotrones of the specific charges for which the stockholders were being asked to remove him. (PRSS 25). Moreover, Williams undisputedly had conversations with multiple shareholders soliciting their consents to Kolokotrones's removal without notifying Kolokotrones. (PRSS 26.) Defendants also do not present any evidence in dispute of the fact that they did not provide Kolokotrones an opportunity at NM's expense to present a defense to the stockholders. (PRSS 27.) Being told of the Board's vote two days before the Board voted was not providing Kolokotrones an opportunity to defend himself to the stockholders. The Court finds that Defendants do not raise a triable issue of fact to dispute the evidence that there was inadequate process given to Kolokotrones prior to his removal from the Board.

For the foregoing reasons, the Court denies Defendants' motion for summary judgment and grants Plaintiffs' motion for summary judgment as to Plaintiffs' declaratory relief cause of action.

B. <u>Fourth and Sixth Causes of Action – Damages</u>

Defendants argue that the fourth and sixth causes of action fail because Plaintiffs have not alleged damages as a result of the alleged breaches of contract. They argue that, as a matter of law, under *E.I. Du Pont de Nemours & Co. v. Admiral Ins. Co.*, No. 89C-AU-99, 1994 Del.Super. LEXIS 346, at *20, "attorney's fees and litigation costs do not constitute legally cognizable damages." Similarly, in California, under *Stokus v. Marsh* (1990) 217 Cal. App. 3d

11

647, 650, "[i]nvoking Civil Code section 1717, which provides in pertinent part that '[r]easonable attorney's fees shall be fixed by the court, and shall be an element of costs of suit,' plaintiff sought and was awarded attorneys' fees as costs, not as damages. This treatment of the fee request was correct." Defendants contend that Plaintiffs are impermissibly attempting to construe classic litigation expenses as damages. They point to a number of damages sought that are clearly litigation expenses. For example:

- PREPARE COMPLAINT FOR FAILURE TO RECOGNIZE A. WISCH AS BOARD MEMBER AND APPLICATION FOR INJUNCTIVE RELIEF. ...
- REVIEW NOTICE OF DEPOSITION OF A. WISCH; ASSESS VALIDITY OF NOTICE. ...
- REVIEW/ANALYZE DEADLINE TO OBJECT TO DEPOSITION OF A. WISCH. ...
- DRAFT EMAILS TO M. FEINSTEIN REGARDING A. WISCH DEPOSITION; DRAFT EMAIL TO A. WISCH; TELEPHONIC CONFERENCE WITH A. WISCH; DRAFT OBJECTIONS TO A. WISCH DEPOSITION; DRAFT EMAILS TO M. FEINSTEIN REGARDING SAME. ...
- REVISE OBJECTIONS TO A. WISCH DEPOSITION NOTICE.

These are clearly expenses arising out of this litigation.

On the other hand, Plaintiffs argue that they present evidence of additional expenses related to transactional work their counsel carried out primarily in advising Wisch regarding his duties as a NM board director, such as, *inter alia,* advising Wisch with regard to an indemnification agreement he entered into with NM (McCarthy Opp. Decl. Ex. 1 at 8356), and advising Wisch with regard to NM's Series 1 financing campaign (*e.g., id.* at 8512). Neither party presents any authority as to whether such transactional (as opposed to litigation) fees can be claimed as damages, but Defendants have not argued that they cannot. As to the question whether the remaining entries are properly categorized as litigation or transactional expenses, this appears to be a question of fact that should be decided by a trier of fact. Finally, whether

12

1 | Wisch required this advice above and beyond what Kolokotrones would have needed is also a
2 | question of fact not determinable at the summary judgment stage.
3 |     For this reason, Defendants' motion for summary judgment as to the fourth cause of
4 | action is denied. With regard to the sixth cause of action, the Court notes, first of all, that it is
5 | alleged solely against NM and proceedings against NM have been stayed due to the bankruptcy.
6 | More importantly, however, because the sixth cause of action is asserted against NM, the
7 | individual defendants who brought this motion have no standing to attack it on behalf of the
8 | company. Accordingly, Defendant's motion for summary judgment as to the sixth cause of
9 | action is denied.
10 |     C. Injunctive Relief
11 |     Because the Court has found that there is sufficient evidence raising triable questions of
12 | fact regarding damages in relation to the fourth cause of action, the Court need not reach the
13 | issue of Plaintiffs' alternative argument regarding injunctive relief.
14 |     D. Penal Code Section 637.2
15 |     Defendants finally argue that Plaintiffs' eighth cause of action for a violation of Penal
16 | Code 637.2 fails because (1) Kolokotrones testified that he consented to two of the recordings,
17 | and (2) the claim is predicated on a violation of Penal Code section 632(a) which prohibits only a
18 | recording without the consent of all parties to a confidential communication. Finally, Defendants
19 | argue that section 637.2 provides for an action only against "the person who committed the
20 | violation," and that Kolokotrones has presented no evidence as to the person who initiated the
21 | recording.
22 |     Although Plaintiffs argue that there is triable issue of material fact as to whether
23 | Kolokotrones consented to the recordings, Plaintiffs do not dispute that they present no evidence
24 | that any of the individual Defendants initiated the recording, and for that reason, the cause of
25 | action as to the individual Defendants must fail. Accordingly, Defendants' motion for summary
26 | judgment is granted as to the eighth cause of action.
27 |
28 |

*Conclusion*

Based on the foregoing, the Court grants Plaintiffs' motion for summary adjudication and denies Defendants' motion on Plaintiffs' declaratory relief claim. The Court declares that:

1. Kolokotrones's removal from the Board was without cause and procedurally defective, rendering it invalid; and
2. KB is entitled to designate Kolokotrones to serve on the NM Board, and the non-debtor defendants are required to vote to elect him to the Board as KB's designee as per the Voting Agreement.

The Court denies Defendants' motion for summary judgment, and denies their motion for summary adjudication as to Plaintiffs' fourth and sixth causes of action. The Court grants Defendants' motion for summary adjudication as to the eighth cause of action.

Plaintiffs are ordered to provide notice of this Order.

DATED: October 6, 2017

*(signature)*
Hon. Teresa A. Beaudet
Judge, Los Angeles Superior Court