# EXHIBIT C

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) | INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 4 | RECEIVED NYSCEF: 02/08/2021

Case 9:21-bk-10261-DS    Doc 47-3    Filed 04/08/21    Entered 04/08/21 17:10:02    Desc
Exhibit C    Page 2 of 13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------ x
                                                   :
ALIGNMENT DEBT HOLDINGS 1, LLC,      :
                                                   :     Index No.
                      Plaintiff,                        :
                                                   :     Justice _____
                      -against-                       :
                                                   :     **AFFIDAVIT IN SUPPORT OF**
37 VENTURES, LLC,                           :     **MOTION FOR SUMMARY**
                                                   :     **JUDGMENT IN LIEU OF**
                      Defendant.                 :     **COMPLAINT**
                                                   :
------------------------------------------------------------ x

STATE OF NEW YORK     )
                                 :ss
COUNTY OF                )

         I, Vadim Margulis, being duly sworn, deposes and says:

         1.       I am the Manager of Alignment Debt Holdings 1, LLC ("Alignment"), the Plaintiff in this action and, as such, I am fully familiar with the facts and circumstances of this matter, the underlying agreements, and Alignment's business records regarding this matter. I am authorized by Alignment to make this Affidavit on its behalf.

         2.       I submit this Affidavit in support of Alignment's motion, pursuant to CPLR § 3213 for Summary Judgment In Lieu Of Complaint against the Defendant 37 Ventures, LLC.

**I.     The Parties**

         3.       Plaintiff Alignment Debt Holdings 1, LLC, is an investment firm organized under the laws of Delaware which maintains its business address in New York at 500 7th Avenue, 8th Floor, New York, NY 10018. Alignment is the Agent for ATMedia Investor II, LLC (the "Lender") under the terms of the Loan Agreement described herein. The Lender has authorized Alignment to commence this action on its behalf.

1

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

1 of 12

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 02/08/2021

Case 9:21-bk-10261-DS    Doc 47-3    Filed 04/08/21    Entered 04/08/21 17:10:02    Desc
Exhibit C    Page 3 of 13

4.  Defendant 37 Ventures, LLC ("Ventures" or the "Guarantor"), upon information and belief, is a limited liability company organized under the laws of Delaware. It maintains a business address at 616 W. Stafford Rd, Thousand Oaks, California 91361. The Guarantor is an investment entity 100% owned by and under the complete control of Yuri Pikover, its sole member, and is the largest stockholder of the Borrower, Larada Sciences, Inc. ("Larada" or the "Borrower").

II.  **The Terms of The Loan and Guaranty Agreement**

5.  On May 23, 2018, the Borrower obtained financing for its operations from the Lender in the form of a $10.0 million credit facility consisting of an initial loan commitment of $7.5 million and a delayed draw commitment of $2.5 million (collectively, the "Loan"), subject to the repayment terms, interest, fees and other terms and conditions set forth in the Loan Agreement, dated May 23, 2018, by and among Borrower, Alignment and Lender (the "Loan Agreement"). A true and correct copy of the Loan Agreement is annexed hereto as **Exhibit 1**.

6.  Under the Loan Agreement, as a condition precedent to extending any portion of the Loan to the Borrower, Alignment required that Ventures, as Larada's largest stockholder, guarantee Larada's obligations under the Loan Agreement. Ex. 1, at 200 (Exhibit F); Ex. 2, at 1. Accordingly, on or about May 23, 2018, Ventures executed an absolute, unconditional, and irrevocable guaranty pursuant to which it guaranteed Larada's repayment of the Loan and other obligations under the Loan Agreement (the "Guaranty"). A true and correct copy of the Guaranty is annexed hereto as **Exhibit 2**.

7.  Pursuant to the Guaranty, Ventures, as Guarantor, guaranteed Larada's payment obligations under the Loan Agreement as follows:

> The Guarantor hereby absolutely, unconditionally and irrevocably guarantees to the Collateral Agent [Alignment], for the ratable

2

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

2 of 12

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 02/08/2021

Case 9:21-bk-10261-DS    Doc 47-3    Filed 04/08/21    Entered 04/08/21 17:10:02    Desc
Exhibit C    Page 4 of 13

benefit of the Secured Parties, as primary obligor and not merely as surety,

(a) the due and prompt payment by the Borrower of:

(i) the principal of and premium, if any, and interest at the rate specified in the Loan Agreement (including interest accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding ("Post-Petition Interest") on the Extensions of Credit, when and as due, whether at scheduled maturity, date set for prepayment, by acceleration or otherwise, and

(ii) all other monetary obligations of the Borrower to the Collateral Agent [Alignment] and the Secured Parties under or in respect of the Loan Documents, when and as due, including fees, costs, expenses (including, without limitation, reasonable fees and expenses of counsel incurred by the Collateral Agent [Alignment] or any other Secured Party in enforcing any rights under this Agreement or any other Loan Document), reimbursement obligations, contract causes of action and indemnities, whether primary, secondary, direct or indirect, absolute or contingent, fixed or otherwise. . . .

See Ex. 2 § 2.01.

8. At the time of entering the Loan Agreement, the Borrower executed a Promissory Note, dated May 23, 2018, in favor of the Lender in the original principal amount of $7,500,000 (the "Promissory Note") and a Pledge and Security Agreement, dated May 23, 2018, with the Agent (the "Pledge Agreement"). A true and correct copy of the Promissory Note is annexed hereto as **Exhibit 3**. A true and correct copy of the Pledge Agreement is annexed hereto as **Exhibit 4**.

9. At the time of entering the Loan Agreement, the Borrower also executed a Fee Letter, dated May 23, 2018, with the Agent. See Ex. 1, at page 8 (defining "Fee Letter"). A true and correct copy of the Fee Letter is annexed hereto as **Exhibit 5**.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

3 of 12

### III. The Guarantor is Required to Pay Amounts Due and Owing Under the Guaranty Following the Borrower's Default on its Contractual Obligations

#### A. In 2018 and 2019, the Borrower Breached Numerous Provisions of the Loan Agreement

10. In 2018 and 2019, Larada breached numerous provisions of the Loan Agreement.

11. On January 24, 2019, Alignment notified the Board of Directors of Larada, the Chief Executive Officer of Larada, and Yuri Pikover, the sole member of the Guarantor, that "[t]he Company and the Guarantor are currently facing multiple defaults under the Loan Agreement and Guarantee" and specified each of the defaults under the precise terms of the Loan Agreement. A true and correct copy of this letter is annexed hereto as **Exhibit 6**. The covenant defaults identified included each of the following:

   i. Pursuant to Section 8.01(e) of the Loan Agreement: failure to provide timely notices regarding entry into Material Agreements required under Section 6.03(g) in connection with large territory sales and repurchases conducted in Q3 and Q4 2018;

   ii. Pursuant to Section 5.02(b) of the Guarantee: failure to provide NAV update at December 31, 2018, as well as the failure to notify the Agent of NAV decline in excess of 10% due to significant share price deterioration of Savara Inc. in December 2018; and

   iii. Pursuant to Section 8.01(f) of the Loan Agreement: incorrect or misleading representations, warranties, certifications or statements made by the Company in the Q3 and Q4 2018 Compliance Certificates.

See Ex. 6, at 1.

12. On May 23, 2019, Alignment notified the Board of Directors of Larada, the Chief Executive Officer of Larada, Yuri Pikover, the sole member of the Guarantor, and the Independent Director of Larada that "the Company and Principal Stockholder [the Guarantor]" had "violated additional compliance requirements and covenants." A true and correct copy of this letter is annexed hereto as **Exhibit 7**. The covenant defaults identified included each of the following:

4

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

4 of 12

i. Pursuant to Section 5 of the Compliance Certificate: Significant differences in the calculation of reported Clinic EBITDA, a key financial metric for the purpose of compliance with the financial maintenance covenant "Senior Secured Debt to Clinic EBITDA Ratio", in the Q1 2019 Compliance Certificate. The Company has admitted to the calculation inaccuracies;

ii. Pursuant to Section 8.01(b) of the Loan Agreement: Failure to comply with "cash and cash equivalents on deposit in Controlled Accounts" financial maintenance covenant, which constitutes an Event of Default;

iii. Pursuant to Section 5.02(a) of the Guarantee: Failure to provide to the Collateral Agent copies of all income tax returns of the Guarantor and any requests for extensions of filing deadlines, within ten days of the filing of such returns or requests for extensions;

iv. Pursuant to Section 5.02(d) of the Guarantee: Failure to provide within fifteen days following the Closing Date evidence that the Investments listed on Exhibit A of the Guarantee are held of record by the Guarantor;

v. Pursuant to Section 8.01(e) of the Loan Agreement: Failure to provide timely notices regarding entry into Material Agreements, as required under Section 6.03(g), in connection with large territory sales and repurchases conducted in Q3 and Q4 2018;

vi. Pursuant to Section 5.02(b) of the Guarantee: Failure to provide NAV update at December 31, 2018, as well as failure to notify the Collateral Agent of NAV decline in excess of 10% due to significant share price deterioration of Savara Inc.;

vii. Pursuant to Section 1.03(b) of the Loan Agreement: The Lenders have repeatedly requested the in-person meetings with the Company's management and Principal Stockholder to discuss the financials, financial and operating plan, and financial covenants of the business. To date, such plan has not been received, and the meeting has not been scheduled.

See Ex. 7.

13. On June 7, 2019, Alignment notified the Chief Executive Officer of Larada and Yuri Pikover, the sole member of the Guarantor, of continuing defaults and new defaults under the Loan Agreement. A true and correct copy of this letter is annexed hereto as **Exhibit 8**. Specifically, the letter identified the following additional defaults:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

    i. Failure to maintain Minimum Cash and Cash Equivalents on deposit in Controlled Accounts (Section 6.13(e) "Financial Covenants and Key Performance Indicators" of the Loan Agreement); and

    ii. Failure to make payment to the Agent per the Fee Letter within five (5) business days after becoming due (Section 2.05(d) "Other Fees" of the Loan Agreement).

Ex. 8, at 1.

14. On August 19, 2019, Alignment wrote to the Chief Executive Officer of Larada, Yuri Pikover, the sole member of the Guarantor, the Independent Director of Larada, and Larada's Auditor regarding the Borrower's multiple ongoing defaults under the Loan Agreement. A true and correct copy of this letter is annexed hereto as **Exhibit 9**.

15. On November 4, 2019, Alignment notified the Chief Executive Officer of Larada, Yuri Pikover, the sole member of the Guarantor, and the Independent Director of Larada that "the Company and Guarantor are currently facing numerous defaults under the Loan Agreement and Guarantee." A true and correct copy of this letter is annexed hereto as **Exhibit 10**. The letter set forth the continuing defaults and required that:

> pursuant to Section 6.11 of the Loan Agreement, the Company: Provide prompt access to the Lenders' representatives and third party advisors appointed by the Lenders to examine corporate, financial, and operating records and avail the Company's directors, officers and other staff and independent public accountants for interviews; and Advance $50,000.00 towards the services provided by such advisors as per attached invoice.

See Ex. 10, at 2.

16. On February 10, 2020, Alignment sent an additional letter to the Chief Executive Officer of Larada, Yuri Pikover, the sole member of the Guarantor, and the Independent Director of Larada notifying them that "per the Q4 2019 Compliance Certificate, the Borrower and Guarantor are currently facing defaults under the Loan Agreement and Guarantee." A true and correct copy of this letter is annexed hereto as **Exhibit 11**. A true and correct copy of the Q4 2019 Compliance Certificate is annexed hereto as **Exhibit 12**. These additional defaults included:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

     i. Failure to maintain a Consolidated Funded Debt to Consolidated Funded EBITDA Ratio of no more than 5.5 to 1.0 as of the fiscal quarter ending December 31, 2019 as required under Section 6.13(c) of the Loan Agreement; and

     ii. Failure to maintain a Fixed Charge Coverage Ratio of no less than 1.25 to 1.0 as of the fiscal quarter ending December 31, 2019 as required under Section 6.13(d) of the Loan Agreement.

*See* Ex. 11, at 1.

17. On March 24, 2020, Alignment sent a letter to the Guarantor and Yuri Pikover, the sole member of the Guarantor, requesting documents required under the Guaranty and reserving its rights in light of "the existence of Events of Default under the Loan Agreement." A true and correct copy of this letter is annexed hereto as **Exhibit 13**.

18. On April 30, 2020, Alignment sent a letter to the Guarantor and Yuri Pikover, the sole member of the Guarantor, regarding, "Notice of Default and Reservation of Rights Letter with respect to Guarantee of Loan to Larada Sciences, Inc." A true and correct copy of this letter is annexed hereto as **Exhibit 14**. The letter notified the Guarantor that, *inter alia*, "[t]here are currently multiple Events of Default under the Loan Agreement, as detailed in our prior written correspondence with you on behalf of the Guarantor, and the Borrower. The Guarantee was entered into for security in exactly this type of situation. The Agent hereby demands that you . . . immediately comply with our prior requests to secure the Guarantee with all material assets of the Guarantor . . . " Ex. 14, at 2. Failure to do so, Alignment indicated, meant that Alignment would "pursue the Guarantor and [Yuri Pikover] individually for all damages arising from the above-referenced . . . defaults" (as well as for other breaches noticed in the letter). Ex. 14, at 3.

19. On October 27, 2020, Alignment sent an additional letter to the Chief Executive Officer of Larada, Yuri Pikover, the sole member of the Guarantor, and the Independent Director of Larada notifying them that "On October 23, 2020, the Agent was made aware of management's

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 02/08/2021

Case 9:21-bk-10261-DS    Doc 47-3    Filed 04/08/21    Entered 04/08/21 17:10:02    Desc
Exhibit C    Page 9 of 13

actions to redirect the Borrower's operating cash out of the Controlled Accounts with Wells Fargo Bank, N.A. into to a bank account with no deposit account control agreements in place, which is in clear violation of Section 6.13(e) of the Loan Agreement." A true and correct copy of this letter is annexed hereto as **Exhibit 15**.

20. On January 7, 2021, Alignment sent a letter to the Chief Executive Officer of Larada, Yuri Pikover, the sole member of the Guarantor, and the Independent Director requesting documents required under the Guaranty and reserving its rights in light of "the existence of Events of Default under the Loan Agreement." A true and correct copy of this letter is annexed hereto as **Exhibit 16**.

21. On February 2, 2021, Alignment sent a letter to the Chief Executive Officer of Larada, Yuri Pikover, the sole member of the Guarantor, and the Independent Director notifying them that "as shown in the Q4 2020 Compliance Certificate, Events of Default have occurred and are continuing with respect to the Borrower and the Guarantor under the Loan Agreement and the Guaranty" and reserving its rights in light of "the existence of Events of Default under the Loan Agreement." A true and correct copy of this letter is annexed hereto as **Exhibit 17**. A true and correct copy of the Q4 2020 Compliance Certificate is annexed hereto as **Exhibit 18**.

B. **The Borrower Larada Failed to Make Required Loan Principal Payments**

22. Under Section 2.03 of the Loan Agreement "the aggregate principal amount of Loans (including all accreted PIK [payment-in-kind] Interest with respect thereto) outstanding on such date, together with all accrued and unpaid interest (including Incremental Cash Interest) and fees, including the Exit Fee, shall be due and payable on the Maturity Date." Ex. 1 § 2.03. The "Maturity Date" under the terms of the Agreement was "May 23, 2021, subject to acceleration provided" in the Loan Agreement. Ex. 1, at page 14 (defining "Maturity Date").

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

8 of 12

### C. The Borrower Failed to Make Required Interest Payments

23.  Under Section 2.04(d) of the Loan Agreement the Borrower was required to make all interest payments by "the last Business Day of each calendar month." Ex. 1 § 2.04.

24.  Nonpayment of "any amount of principal or interest of any Loan" constituted an Event of Default under Section 8.01(a) of the Loan Agreement. Ex. 1 § 8.01(a).

25.  Under Section 2.04(d) of the Loan Agreement, the Borrower was required to make interest payments to Alignment on May 29, 2020, June 30, 2020, July 31, 2020, August 31, 2020, September 30, 2020, October 30, 2020, November 30, 2020, December 31, 2020, and January 31, 2021 (the "Required Interest Payments"). Ex. 1 § 2.04(d).

26.  The Borrower failed to make each of the Required Interest Payments when due or thereafter. Such nonpayment constituted Events of Default under 8.01(a) of the Loan Agreement.

### D. The Borrower Failed to Make Required Fee Payments

27.  Under Section 2.05(d) of the Loan Agreement, the Borrower was required to pay "fees due and owing to the Agent or Lenders" under the Fee Letter. Ex. 1 § 2.05(d); Ex. 5.

28.  The fee payment under the Fee Letter was due $10,000. Ex. 5, at 1.

29.  Failure to pay such a fee "within five Business Days after the same becomes due" constituted an Event of Default under Section 8.01(a) of the Loan Agreement. Ex. 1 § 8.01(a).

30.  The Borrower failed to make a required fee payment to Alignment within five (5) business days after becoming due. Ex. 1 § 2.05(d). Such nonpayment constituted an Event of Default under 8.01(a) under the Loan Agreement.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

### E. The Borrower Failed to Comply with Other Loan Provisions

31. The Borrower also failed to comply with certain covenants and provisions set forth in the Loan Agreement and the other Loan Documents, including the Minimum Cash and Cash Equivalents on deposit in Controlled Accounts covenant. Ex. 1 § 6.13(e).

32. Such covenant breaches constituted Events of Default under Section 8.01(c) of the Loan Agreement.

### F. Alignment as Agent Provides the Borrower and the Guarantor with Notice of Default, Acceleration, and Demand For Payment

33. Under Section 8.02 of the Loan Agreement, upon Event of Default, Alignment "shall, at the request of, or may, with the consent of, the Required Lenders, take any or all of the following actions:

> (a) declare the unpaid principal amount of all outstanding Loans, all interest accrued and unpaid thereon, and all other amounts owing or payable hereunder or under any other Loan Document, if then outstanding, to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by Borrower; and
>
> (b) exercise on behalf of itself and the Lenders all rights and remedies available to it and the Lenders under the Loan Documents.

See Ex. 1 § 8.02.

34. In light of Larada's continued defaults, on July 3, 2020, Alignment served Larada, as Borrower, and Ventures, as Guarantor with a Notice of Default, Acceleration and Demand for Payment (the "Default Notice"). A true and correct copy of the Default Notice is annexed hereto as **Exhibit 19**. In the Default Notice, Alignment accelerated the Loan and demanded payment of all sums due under the Loan Agreement, including principal, interest, default interest, and attorneys' fees. See Ex. 19.

35. The Default Notice was sent to the Guarantor by copy at the registered address specified in Schedule 10.02 of the Loan Agreement, as follows: 37 Ventures, LLC, 616 W Stafford

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Rd, Thousand Oaks, CA 91361, Attention: Yuri Pikover, Email: ypikover@gmail.com. *See* Ex. 19, at 4; Ex. 1, at Schedule 10.02.

36. The Default Notice stated specifically as follows:

> By copy hereof, Agent is providing Guarantor with notice of Borrower's Defaults and making demand for payment. Accordingly, demand is hereby made on all Obligors for immediate payment of all sums due under the Loan Documents, including but not limited to principal, interest, default interest, late payment charges, attorney's fees and costs, and all other expenses that have been or will be incurred by Lender in its efforts to enforce the Loan Documents. Default interest shall begin accruing as of the date of this letter and continue until payment in full is received, in accordance with the terms of the Loan Documents.

Ex. 19, at 4.

37. The Default Notice to the Guarantor conformed with Section 6.04 of the Guaranty, which provided that notice to the Guarantor would be "to it at the address, telecopier number, electronic mail address or telephone number specified for such Person on Schedule 10.02 of the Loan Agreement." *See* Ex. 2 § 6.04; Ex. 1, at Schedule 10.02.

38. In response to the Default Notice, Larada failed to make payment of the Loan and the other amounts due under the Loan Agreement, all of which remain due and owing.

39. Under Guaranty, Ventures was required to pay Alignment all amounts due but has failed to do so. *See* Ex. 2 § 2.01. In response to the Default Notice, Ventures failed to make payment of the Loan and it remains due and owing.

40. Ventures is liable to Alignment, for the benefit of the Lender, under the Guaranty for all sums due under the Loan Agreement, including the full amount of the Loan—$7,500,000 million—as well as payment of Alignment's attorneys' fees and expenses incurred in connection with enforcing its rights in the amount of $290,606.48. *See* Ex. 2 § 2.01(a)(i); *see also* Ex. 1 § 10.04(a). Ventures is also liable for interest, including interest accrued at the Default Rate, as

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

defined in the Loan Agreement, under Section 2.04 of the Loan Agreement in the amount of $1,940,059.32. *See* Ex. 1 §2.04.

41.    No previous application has been made for the relief requested herein.

_____
Vadim Margulis

Sworn to before me this
08 day of February 2021

_____
NOTARY PUBLIC



MARJORIE VELEZ
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Queens County
01VE6342850
MY COMMISSION EXPIRES 05/31/2024

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.