1  Eric Goldberg (SBN 157544)
**DLA PIPER LLP (US)**
2  2000 Avenue of the Stars
Suite 400 North Tower
3  Los Angeles, California 90067-4704
Tel: 310.595.3000
4  Fax: 310.595.3300
Email: eric.goldberg@us.dlapiper.com
5

6  Attorneys for Alignment Debt Holdings 1, LLC,
as Agent for Atmedia Investor II, LLC
7

8  STEVE WARREN (SBN 136895)
MARC FEINSTEIN (SBN 158901)
9  JACOB T. BEISWENGER (SBN 321012)
**O'MELVENY & MYERS LLP**
10  400 South Hope Street
Los Angeles, California 90071
11  Telephone:   (213) 430-6000
Facsimile:   (213) 430-6407
12

13  Attorneys for Knight and Bishop, L.P.,
Creditor and Interested Party

14

15              UNITED STATES BANKRUPTCY COURT

16      CENTRAL DISTRICT OF CALIFORNIA – SANTA BARBARA DIVISION

17

| | |
|---|---|
| 18  In re:<br><br>19  37 VENTURES, LLC,<br><br>20  Debtor and Debtor in Possession.<br><br>21 _____<br><br>22<br><br>23  In re:<br><br>24  LARADA SCIENCES, INC.,<br>25  Debtor and Debtor in Possession. | Lead Case No. 9:21-bk-10261 DS<br><br>Jointly administered with:<br>9:21-bk-10269-DS<br>(Larada Sciences, Inc.)<br><br>Chapter 11 Cases<br><br>[This pleading affects the<br>37 Ventures, LLC case only]<br><br>**CREDITORS' NOTICE OF JOINT MOTION AND JOINT MOTION TO TERMINATE EXCLUSIVITY FOR 37 VENTURES**<br><br>**Hearing**<br>**Date:** June 22, 2021<br>**Time:** 11:30 a.m. PDT<br>**Place:** via ZoomGov |

26

27

28

-1-

West\294375091.4

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that creditor Alignment Debt Holdings 1, LLC, as Agent for Atmedia Investor II, LLC ("**Alignment**"), together with creditor Knight and Bishop, L.P. ("**KB**" and with Alignment, the "**Creditors**"), hereby move the Court ("**Motion**") to terminate the exclusive period of debtor 37 Ventures, LLC ("**37 Ventures**") to file and confirm a chapter 11 plan, pursuant to section 1121(d) of title 11 of the United States Bankruptcy Code ("**Code**").  In support of the Motion, Creditors rely on the attached Memorandum of Points & Authorities; the accompanying Declarations of Eric Goldberg ("**Goldberg Declaration**") and Marc Feinstein ("**Feinstein Declaration**") and the exhibits thereto; the arguments and representations of counsel who appear at the hearing on the Motion; and the record in this case.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Motion, the Movants seek to have the Court shorten for "cause" the exclusive period that 37 Ventures has to file and confirm a plan of reorganization, so that the Movants may file a creditors' chapter plan for 37 Ventures.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f)(1), any opposition or other response to the Motion must be filed with the Court and served on counsel to Alignment; counsel to KB; counsel to 37 Ventures; counsel to debtor Larada Sciences, Inc.; and the Office of the United States Trustee within fourteen (14) days after the date of service of this Notice of Motion and Motion.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013- (1)(h), failure to file and serve a timely response to the Motion may be deemed to be consent to the granting of the Motion.

-2-

# TABLE OF CONTENTS

**Page**

**NOTICE OF MOTION** ......................................................................................................2

**MEMORANDUM OF POINTS & AUTHORITIES** ...............................................................6

**I. INTRODUCTION** ...........................................................................................................6

**II. STATEMENT OF FACTS** ............................................................................................8

    A.    Procedural Background and Jurisdiction ......................................................8

    B.    The Joint Administration Motion ..................................................................9

    C.    37 Ventures' Business and its Inability to Generate Cash ..........................9

    D.    37 Ventures' Liabilities: Alignment and KB are the Only Creditors ...........11

    E.    37 Ventures' Assets ..................................................................................12

    F.    The Creditors' History With Mr. Pikover .....................................................13

**III. DISCUSSION** ...........................................................................................................18

**IV. CONCLUSION** ..........................................................................................................24

West\294375091.4

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*In re Adelphia Commc'ns Corp.*,
5
352 B.R. 578 (Bankr. S.D.N.Y. 2006)     17

*In re All Seasons Indus.*,
6
121 B.R. 1002,1006 (Bankr. N.D. Ind. 1990) .....................................................17

7

*In re Dow Corning Corp.*,
8
208 B.R. 661 (Bankr. E.D. Mich. 1997) ..............................................................18

9

*In re Henry Mayo Newhall Mem'l Hosp.*,
282 B.R. 444 (B.A.P. 9th Cir. 2002)....................................................................17

10

*In re Central Jersey Airport Servs.*, LLC, 282 B.R. 176 (Bankr. D.N.J. 2002) .........18

11

*In re Situation Mgmt. Syst.*,
12
252 B.R. 859 (Bankr. D. Mass. 2000) .................................................................18

13

*Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*,
14
844 F.2d 1142 (5th Cir. 1988)..............................................................................18

15

*United States Sav. Ass'n v. Timbers of Inwood Forest Assocs. (In re Timbers
of Inwood Forest Assocs., Ltd.)*,
16
808 F.2d 363 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988)...................................17

17

*In re Wash.-St. Tammany Elec. Coop. Inc.*,
18
97 B.R. 852..........................................................................................................17

**Statutes**

19

20
11 U.S.C. § 341 ...........................................................................................................9

21
11 U.S.C. § 502(e)(1)(B) ...........................................................................................12

22
11 U.S.C. § 1121 ..................................................................................................16, 17

23
11 U.S.C. § 1121(b) .....................................................................................................6

24
11 U.S.C. § 1121(d) ...........................................................................................5, 6, 17

25
11 U.S.C. § 1129(a)(10)..............................................................................................20

26
28 U.S.C. § 157(b)(2)(A) ..............................................................................................9

27
28 U.S.C. § 1334 ..........................................................................................................9

28

**Other Authorities**

H.R. Conf. Rep. No. 99-958, <u>reprinted in</u> U.S. Code Cong. & Adm. News
    5227 ............................................................................................................... 17

Local Bankruptcy Rule 9013- (1)(h) ........................................................................ 5

Local Bankruptcy Rule 9013-1(o)(1) ....................................................................... 5

Rule 2004 ............................................................................................................ 6, 8

S. Rep. No. 99-764 ................................................................................................ 17

WEST\294375091.4

1

### MEMORANDUM OF POINTS & AUTHORITIES

2

3

Alignment Debt Holdings 1, LLC, as Agent for Atmedia Investor II, LLC (in such

4

capacity, "**Alignment**"), by and through its undersigned counsel, DLA Piper LLP (US),

and Knight and Bishop, L.P. ("**KB**" and, with Alignment, the "**Creditors**"), by and through

5

its undersigned counsel, O'Melveny & Myers LLP, respectfully submit this motion

6

7

("**Motion**") to terminate the exclusive period of debtor 37 Ventures, LLC ("**37 Ventures**")

8

to file a chapter 11 plan pursuant to section 1121(d) of title 11 of the United States Code

9

("**Code**").  In support of the Motion, Creditors rely on the attached Goldberg Declaration

10

and Feinstein Declaration, and respectfully state as follows:

11

### I.
### INTRODUCTION

12

13

1.    The facts and circumstances of this case warrant terminating 37 Ventures'

14

exclusive period to file a chapter 11 plan right now, prior to expiration of the initial 120

15

days provided under Code section 1121(b).

16

17

2.    37 Ventures is no more than a holding company.  Its assets consist of

nothing more than the equity investments selected by its 100% owner, Yuri Pikover ("**Mr.**

18

19

**Pikover**").  37 Ventures has no operations, no employees, no office, and no liquid assets.

20

The only material assets listed on its schedules ("**Schedules**") [Dkt. No. 50], other than

21

a *de minimis* amount of cash, are minority positions in twelve start-up companies, of

22

undisclosed values, including in the jointly administered debtor Larada Sciences, Inc.

23

("**Larada**"), as well as an allegedly defunct entity, Ninja Metrics, Inc.

24

3.    Despite the disclosure obligations inherent in a chapter 11 case, 37

25

Ventures has been far less than transparent, leaving creditors and the Court in the dark

26

27

as to the value of its holdings and requiring the Creditors to seek discovery under Rule

28

2004 to obtain any information regarding the value of 37 Ventures' assets.  All of this

information should have been disclosed in the Schedules in the first place. This lack of transparency is par for the course, however, as Mr. Pikover has a history of obfuscation, spoliation and misrepresentation in his business dealings with the Creditors.

4.     37 Ventures owes the two Creditors joining in this Motion more than $14 million, which constitutes the entirety of its liabilities to non-insiders. *This bears repeating: Alignment and KB are the only creditors of 37 Ventures not affiliated with Mr. Pikover.* In recognition of their unfortunate history with Mr. Pikover, the Creditors will vote against any plan of reorganization that leaves Mr. Pikover in charge of deciding if, when and how the Creditors will be repaid. With no secured debt, and no other class of creditors to form an impaired consenting class, it is therefore impossible for 37 Ventures to propose a confirmable plan in this case, consensual or otherwise.

5.     The Creditors have absolutely no confidence that Mr. Pikover will protect their interests or fulfill his fiduciary duties to take reasonable actions to maximize their recoveries. Accordingly, the Creditors should be able to propose a plan (as discussed further below, the "**Creditors' Plan**") *now* that efficiently monetizes 37 Ventures' assets and maximizes recoveries for creditors.

6.     As the Court is aware, 37 Ventures has indicated an intent to propose a joint plan with Larada, through which value from 37 Ventures would be siphoned off, not to pay 37 Ventures' creditors, but to prop up Larada, while forcing creditors of 37 Ventures to wait untold years for "natural liquidity events" to *hopefully* occur with respect to 37 Ventures' investments. See *Declaration of Claire Roberts* ("**Roberts Decl**.") [Dkt. No. 38], at ¶29 ("However, it is not the financial strength of [Larada] alone that will make reorganization possible in this case. [Larada] intends to file a joint plan with 37 Ventures which will *over time* pay creditors of both entities in full.") (emphasis added).

7. Mr. Pikover is personally one of Larada's largest creditors, with a scheduled secured claim of $417,372.74, and three scheduled unsecured claims totaling $889,500. See Larada Schedules [Larada Dkt. No. 40] at §§2.28, 3.159, 3.210 and 3.212. He also received nearly $1.4 million from the loan made by Alignment to Larada. See *Knight And Bishop, L.P.'s Notice Of Joint Motion And Joint Motion For An Order Pursuant To Rule 2004 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Examinations of Yuri Pikover and Claire Roberts, (II) Directing the Production of Documents, and (III) Authorizing the Issuance of Subpoenas* ("**2004 Motion**") [Dkt. No. 129] at ¶14.

8. Mr. Pikover's personal economic interest in Larada's success makes his desire to prop up Larada quite suspect, especially when he intends to do so by using assets of 37 Ventures, rather than his personal assets. The only purpose of such a joint plan would be to preserve Mr. Pikover's control, as well as his indirect equity and direct debt positions in Larada (rather than selling or finding an alternative funding source to support Larada's reorganization) and to delay the Creditors' recovery from 37 Ventures for an indeterminate period of time. The fact that 37 Ventures intends to propose such an objectionable and unconfirmable plan supports the immediate termination of exclusivity so the Creditors can promptly file and confirm the Creditors Plan.

## II.
## STATEMENT OF FACTS

### A. Procedural Background and Jurisdiction

9. On March 18, 2021 ("**Petition Date**"), 37 Ventures commenced its bankruptcy case by filing a voluntary petition under chapter 11 of the Code. Larada filed its own chapter 11 case the following day, on March 19, 2021.

10. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This Motion constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

West\294375091.4

11.     The meeting of creditors under Code section 341 ("**341 Meeting**") was held on April 22, 2021.   A copy of the unofficial transcript from the 341 Meeting ("**341 Transcript**") is attached as **Exhibit A** to the accompanying Goldberg Declaration.

**B.     The Joint Administration Motion**

12.     On March 19, 2021, Larada and 37 Ventures (collectively, "**Debtors**") filed an *Ex Parte Motion for Entry of an Order for Joint Administration of Cases; Declaration of Claire Roberts in Support Thereof* ("**Joint Administration Motion**") [Dkt. No. 4].

13.     In the Joint Administration Motion, the Debtors acknowledged that "37 Ventures is the largest single shareholder in Larada" and that "37 Ventures has two primary debts – its potential guaranty on the Alignment Loan … and an arbitration award in favor of an entity called Knight & Bishop in the approximate amount of $3 million." Joint Administration Motion, ¶7.

14.     In the Joint Administration Motion, the Debtors also asserted that:

> Larada and 37 Ventures intend to propose a joint plan which will pay creditors of both entities over time.  Larada expects to use its cash flows from operations to fund the joint plan.  In addition, given a ***reasonable period of time for its portfolio to naturally experience liquidity events***, 37 Ventures appears to have ample assets to pay Alignment in full, and also to pay the arbitration award owed to Knight & Bishop.  It is the synergies between 37 Ventures and Larada that provides [sic] a feasible path to reorganization and payment in full to creditors over time.

Id. at ¶12 (emphasis added).

**C.     37 Ventures' Business and its Inability to Generate Cash**

15.     At the 341 Meeting, Mr. Pikover, the sole and managing member of 37 Ventures, testified that 37 Ventures is merely "an investment vehicle for my investments in various startup companies," and that 37 Ventures has no employees. See 341 Transcript, pp. 18-19.

West\294375091.4

16.   Mr. Pikover also testified at the 341 Meeting that 37 Ventures does not have a written operating agreement (Id. at 24); that the only documents that arguably establish his position as the managing member are the filings to register the company as a Delaware limited liability company, which purportedly identify him as the sole member (Id.); that Mr. Pikover's personal accountant also provides tax services for 37 Ventures (Id.); and that the company's financial records are maintained by Mr. Pikover personally and stored on his personal Google Drive (Id. at 26).  Mr. Pikover also testified that the address listed on the petition as 37 Ventures' principal place of business -- 365 East Avenida de Los Arboles in Thousand Oaks, California -- is just a mailbox, and that the company does not have an office or maintain any records at that address.[1]  Id. at 34.

17.   Further, while Mr. Pikover testified that the total amount of capital invested in 37 Ventures was "approximately $15 million dollars" (Id. at 27), Mr. Pikover refused, on the advice of counsel, to disclose any information as to the current value of 37 Ventures' investments.  In response to questions on this topic, 37 Ventures' counsel asserted that "I don't think that information is available at the moment or, is [] something that [we] want to share publicly," because "[w]e are not prepared for the purposes of this 341(a) meeting to provide specific information as to valuation of 37 Ventures' interest in the various, minority-owned interests." Id. at 28.

18.   Consistent with the Debtors' representations in the Joint Administration Motion, Mr. Pikover further testified at the 341 Meeting that he expects to fund the Debtors' joint plan through vaguely anticipated "liquidity events." Mr. Pikover described these as events that "occur periodically when the privately held companies either go

---

[1] This mail drop was not merely the only hook that provided venue in this District for 37 Ventures, but also for Larada, since Larada's venue designation relies on its status as an affiliate of 37 Ventures, which was the "first to file" debtor.  Larada has no independent basis for venue in this District.

-10-

public or get acquired or get liquidated." Id. at 37.   Despite the intended reliance on such liquidity events to fund a plan, Mr. Pikover testified that 37 Ventures' investments had not realized *any* such liquidity events since at least January 1, 2020. Id. at 42.

19.    Indeed, when questioned about 37 Ventures' ability to generate cash in the past, Mr. Pikover *could not even remember when 37 Ventures had ever generated revenue.* Id. at 45.   Similarly, when asked about 37 Ventures' prospects for generating cash through future liquidity events, Mr. Pikover was only able to suggest that *one* such event *might* occur by the end of 2021, although he could not state when that event might occur or how much cash it might generate. Id. at 39-40.  Given this history, the existence, amount, and timing of any such "naturally occurring liquidity events" would be speculative at best and nowhere near sufficient to establish the feasibility of a chapter 11 plan.

**D.    37 Ventures' Liabilities: Alignment and KB are the Only Real Creditors**

19.    37 Ventures filed its Schedules on April 12, 2021.  The Schedules reflect that 37 Ventures has no secured or priority creditors, and list certain taxing authorities for notice purposes only.  Schedules, pp. 10-12.

20.    Alignment is Larada's senior secured lender, and Larada's obligations to Alignment, which total approximately $10 million, are guaranteed by 37 Ventures.

21.    Alignment is listed on 37 Ventures' Schedules as an unsecured creditor with a claim in the amount of $9,840,673.89.  Id. at 12.   While listed as contingent, unliquidated and disputed, Larada's testimony at the meeting of creditors made clear that such designations only relate to calculations of attorneys' fees and penalty interest.  See 341 Transcript, p. 48. The overwhelming majority of Alignment's claims against both Larada and 37 Ventures is undisputed, liquidated and not contingent.

22.    KB is a judgment creditor of 37 Ventures and is listed on the Schedules with a claim in the amount of $3,765,659.28.  Schedules, p. 12.

West\294375091.4

23.     The Schedules list as unsecured creditors, but for "notice purposes only," Dmitri Williams and Robert Hawk, who 37 Ventures says may have potential contribution claims against it with respect to the KB judgment. Id. at 12-13.  Such claims, if any, likely would be disallowed under Code Section 502(e)(1)(B) as contingent claims for contribution by a joint obligor.  The only other unsecured creditor listed is Mr. Pikover's personal "Pikover Trust," with a scheduled claim of $300,000. Id.  This obligation was incurred to pay a retainer to bankruptcy counsel and has since been acknowledged to be a capital contribution rather than an unsecured claim.

24.     Accordingly, the entirety of 37 Ventures' non-insider liabilities consists of more than $14 million owed to the Creditors, plus potential contribution claims from Messrs. Hawk or Williams if they actually paid the KB judgment.

## E.    37 Ventures' Assets

25.     The Schedules show that 37 Ventures' assets consist of $6,639.07 in a checking account, plus equity positions in 12 start-up companies: Bitvore Corp., EV Connect, Larada, Mobile Cause, Inc., Molecular Vista, Inc., NovaSignal Corp., Oticara, Inc., Savara, Inc., Trascribeme, Inc., SageMedic, Inc., CA Cardiac Solutions, Inc. and Ninja Metrics, Inc. (collectively, the "**Investment Interests**"). Schedules, pp. 5-7.

26.     The Schedules generally identify the *type* and gross *number* of Investment Interests owned by 37 Ventures (such as "Preferred Shares," "Series C Warrants" or "Common Shares"), but do not provide any indication of the *percentage of ownership* associated with such positions, nor any indication of the *value* of such shares, if any.

27.     When asked about the Investment Interests at the 341 Meeting, Mr. Pikover attempted to estimate the percentage of ownership associated with each position (despite not having done so in the Schedules), and suggested that they generally range

from less than 1% to 10%, other than for Larada, for which 37 Ventures owns 26% on a fully diluted basis.  341 Transcript, pp. 21-23.

28.     At the 341 Meeting, however, 37 Ventures' counsel took the position that any further detail about the Investment Interests, such as their value, constituted "proprietary financial information" that may have been provided to Mr. Pikover, in his role as managing member of 37 Ventures, "pursuant to either express or implied confidentiality."  Id. at p. 20.  Counsel for 37 Ventures further stated that information on value was either unavailable or not "something that we want to share publicly.  When the time comes for us to work on a 2004 exam and whatever production you might request potentially with it, we will talk to you about confidentiality issues.  We are not prepared for the purposes of this 341(a) meeting to provide specific information as to valuation of 37 Ventures' interest in the various minority-owned interests." Id. at p. 28.

**F.     The Creditors' History With Mr. Pikover**

29.     The experiences that Alignment and KB have had in dealing with Mr. Pikover demonstrate why the Creditors will not vote to accept any chapter 11 plan that leaves Mr. Pikover in control of 37 Ventures' assets.

Mr. Pickover's Misconduct in Connection with KB

30.     KB holds a judgment entered against 37 Ventures on August 25, 2020 that is listed in 37 Ventures' Schedules in the amount of $3,765,659.28.  That judgment, which is final and unappealable, was the culmination of litigation that stretches back more than five years.  KB sued 37 Ventures, Yuri Pikover and other defendants in California Superior Court in February 2016 for, among things, breach of a shareholder agreement, alleging that defendants wrongfully removed KB's designee (Mark Kolokotrones) from the Board of Directors of a company (Ninja Metrics, Inc) in which 37 Ventures and KB were substantial shareholders.  See First Amended Complaint filed in California Superior

-13-

Court on March 23, 2016, a copy of which is attached to the Feinstein Declaration as **Exhibit 1**. In this litigation KB alleged that Mr. Kolokotrones had repeatedly voiced significant concerns about misconduct by Mr. Pikover and other members of the Board, including failure to comply with shareholder agreements, misrepresentations, irregularities in financial record keeping, excessive management compensation, failure to respond to document and information requests, and conflicts of interest. Id. ¶ 40. KB further alleged that Mr. Pikover responded to Mr. Kolokotrones's complaints with resistance and hostility, and that Mr. Pikover, who controlled 37 Ventures and served as its designee on the Board, manufactured false reasons to justify Mr. Kolokotrones's removal, which could only be done upon a showing of cause with the consent of other shareholders. Id. ¶¶ 12, 41, 47-50

31.    In the California Superior Court litigation, the defendants (including 37 Ventures and Mr. Pikover) were found by the discovery referee and court to have engaged in numerous violations of their discovery obligations. In particular, Mr. Pikover was found to have routinely deleted relevant emails even after becoming aware of threatened litigation regarding the dispute with KB. <u>See</u> *Notice of Recommended Ruling Re: Plaintiff's Motion to Compel Further Responses to Requests for Inspection*, issued by discovery referee on January 17, 2017 and ordered by court on February 1, 2017, a copy of which is attached to the Feinstein Declaration as **Exhibit 2**.

32.    The discovery referee and court ruled in KB's favor on eight discovery motions and awarded monetary sanctions to KB on repeated occasions. For example, after KB discovered that Mr. Pikover had been destroying relevant documents, KB moved for a forensic examination of his personal computers. Finding that Mr. Pikover improperly refused to meet and confer on the motion, the discovery referee awarded sanctions against Mr. Pikover in the amount of $10,000. <u>See</u> Exhibit 2 to the Feinstein Declaration.

West\294375091.4

33.     KB was granted summary adjudication in 2017 concerning its primary claim.  See *Order Re: A. Defendants' Motion for Summary Judgment Or, In The Alternative, Summary Adjudication; B. Plaintiffs' Motion For Summary Judgment Or, In The Alternative, Summary Adjudication*, a copy of which is attached to the Feinstein Declaration as **Exhibit 3**, at p. 14 (finding that Mr. Kolokotrones's removal from the Board was without cause and procedurally defective).  At the time defendants settled with KB in September 2018 over its remaining claims, defendants faced a motion for issue and evidence sanctions brought by KB on the grounds that defendants disobeyed, and were continuing to disobey, court orders requiring production of documents and a privilege log; defendants wrongfully interfered with KB's third-party discovery; and Mr. Pikover and a co-defendant were destroying relevant documents.  Defendants settled before they had to file an opposition to the motion.

34.     In September 2014, in litigation arising out of Mr. Pikover's involvement as a director of another company, Eagle View Technologies, a court in the State of Washington found that Mr. Pikover engaged in self-dealing and granted himself excessive stock options reserved for employees.  See *Court's Findings of Fact, Conclusions of Law and Decision in Favor of Plaintiff*, a copy of which is attached to the Feinstein Declaration as **Exhibit 4**, at ¶¶ 95-112.  That court also found that Mr. Pikover could not control his anger and threats and that he told the Eagleview CEO about how he (Mr. Pikover) had threatened another CEO with a baseball bat, causing the Eagleview CEO to fear for his safety.  Id.

Mr. Pickover's Misconduct in Connection with Alignment

35.     As described above, 37 Ventures' debt to Alignment relates to the guaranty provided by 37 Ventures with respect to the loan made by Alignment to Larada ("**Guaranty**," a copy of which is attached as **Exhibit B** to the Goldberg Declaration).  In

issuing the Guaranty, however, 37 Ventures and Mr. Pikover made material misrepresentations to Alignment regarding the litigation with KB. Specifically, 37 Ventures, through Mr. Pikover, certified that there was no litigation "against the Guarantor or against any of its assets . . . which could have a material adverse effect on the net worth, assets, financial condition, or prospective financial position of" 37 Ventures. See Guaranty at 10, §5.01(f).

36.    This was clearly false: when he signed the Guaranty, Mr. Pikover and 37 Ventures were actively involved in the litigation that resulted in the $3.8 million judgment to KB, which was entered soon after Alignment funded the loan to Larada. Indeed, as of the date Mr. Pikover made the foregoing representation, KB had already been granted summary judgment on one of its major claims against 37 Ventures. See 2004 Motion at ¶4 (noting that KB obtained summary adjudication on its principal claim against 37 Ventures on October 6, 2017, 7 months before the Guaranty was signed).

37.    Disclosures made during this bankruptcy case have been equally troubling. As detailed in the 2004 Motion, 37 Ventures' Schedules list materially *fewer* shares in the portfolio companies being owned by 37 Ventures than do schedules filed with the Guaranty that 37 Ventures provided to Alignment in 2018. 2004 Motion, ¶6. Yet Mr. Pikover testified at the 341(a) Meeting that there had been no transfers or sales of the stock in the relevant portfolio companies in the last four years. 341 Transcript, p. 29. If that is true, why are there fewer shares today than there allegedly were in 2018? If there were otherwise undisclosed transactions, what happened to the shares and the proceeds? Are either or both of the schedules listing the portfolio company shares misstated? If so, why? And by how much? No matter what the explanations are, the discrepancies raise troubling disclosure and/or fiduciary duty issues. The number of shares held by 37 Ventures is critical to creditor recoveries and is very easy to determine.

-16-

38.    Likewise, 37 Ventures' Schedules inexplicably state that the value of each of the Investment Interests is "unknown."  <u>See</u> <u>Schedules</u> at §15.  This just isn't true; Mr. Pikover and the Debtors know what they believe to be the value of the Investment Interests, they simply chose not to disclose that information to the Creditors and the Court.  <u>See</u>, <u>Roberts Decl.</u>, ¶23 ("I am informed that in a forced 27 liquidation scenario, 37 Ventures' portfolio companies would likely yield proceeds in the range of 5-10 million.  However, given a reasonable time period to enable some of its assets to reach natural liquidity events, its assets are likely worth in excess of $40 million.")  Mr. Pikover, Ms. Roberts and the Debtors thus seem able to articulate a value for the Investment Interests when it suits their purposes; they just don't want to disclose to the Court and creditors what they think those values are, or how they were determined.

39.    During the 341 Meeting, Mr. Pikover was questioned about whether any formal valuations had been prepared for the Investment Interests.  Mr. Pikover testified that a formal valuation has been procured for the portfolio (<u>341 Transcript</u>, pp.42-43), but despite repeated requests from each of the Creditors, 37 Ventures has refused to share with the Creditors either the valuation itself or the materials used to prepare that valuation.  So even though 37 Ventures and Mr. Pikover shared various financial information with two separate valuation firms to prepare the valuation, they now contend that some unspecified "confidentiality restrictions" prevent any of that information from being shared with the Creditors or the Court.  This key information thus remains in a black box controlled by Mr. Pikover, and unavailable to the Creditors or the Court.[2]

---

[2] The Creditors are not suggesting that this valuation is necessarily correct or dispositive.  However, as explained in their recently-filed 2004 Motion, the Creditors do believe that this valuation and the materials used to prepare it should be disclosed to the Creditors, especially since 37 Ventures appears to be relying on it without having made any disclosures whatsoever with respect to the value of the portfolio, in the Schedules of otherwise.

West\294375091.4

36.    37 Ventures and Mr. Pikover have a dubious history of misrepresenting or concealing facts from each of the Creditors.  Under these circumstances, the Creditors will never vote to accept to a plan in which Mr. Pikover retains any controlling role.

**III.**
**DISCUSSION**

37.    Code section 1121 states that:

(b)    Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

(c)    Any party in interest, including . . . a creditor . . . may file a plan if and only if –

(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or

(3) the debtor has not filed a plan that has been accepted, before 180 days after the date for relief under this chapter, . . . .

(d)    (1) . . .[O]n request of a party in interest . . . and after notice and a hearing, the court may for cause reduce . . . the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121.

38.    The legislative history of Code section 1121(d) reflects that a debtor's exclusive right to propose and solicit a plan "should not be employed as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory."  S. Rep. No. 99-764; H.R. Conf. Rep. No. 99-958, reprinted in U.S. Code Cong. & Adm. News 5227; see also In re All Seasons Indus., 121 B.R. 1002,1006 (Bankr. N.D. Ind. 1990).  Indeed, Congress codified section 1121(d) to place limits on a debtor's exclusive right to propose a plan in recognition of creditors' interests in the debtor's business.  In re Wash.-St. Tammany Elec. Coop. Inc., 97 B.R. 852, 855 (Bankr. E.D. La. 1989 ("Sec. 1121 represents a congressional acknowledgement that creditors, whose money is

West\294375091.4

invested in the enterprise no less than the debtor's, have a right to a say in the future of that enterprise . . .").

39.    Under section 1121(d), the court "may for cause reduce" 37 Ventures' exclusive period to file and solicit acceptance of a plan.  11 U.S.C. § 1121(d).  Although the term "cause" is not defined in the Code, it is well established that "cause" is a flexible standard designed to balance the competing interests of debtors and their stakeholders. United States Sav. Ass'n v. Timbers of Inwood Forest Assocs. (In re Timbers of Inwood Forest Assocs., Ltd.), 808 F.2d 363, 372 (5th Cir. 1987), aff'd, 484 U.S. 365 (1988) (intent of §1121 is to "limit the delay that makes creditors the hostages of Chapter 11 debtors.").

40.    Whether "cause" exists requires a fact-specific inquiry and is largely within the discretion of the bankruptcy court.  See In re Henry Mayo Newhall Mem'l Hosp., 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002).  The primary consideration for a court in determining whether exclusivity should be terminated is whether termination "will move the case forward."  In re Adelphia Commc'ns Corp., 352 B.R. 578, 590 (Bankr. S.D.N.Y. 2006). Further, "cause" has been defined in more than one instance as the ability of the movant to provide alternative plan options for creditors of a debtor. In re Situation Mgmt. Syst., 252 B.R. 859, 865 (Bankr. D. Mass. 2000) (terminating exclusivity to give creditors option to choose between competing plans).  Also, "'[c]ause might include an unusually large or unusually small case, delay by the debtor, or recalcitrance among creditors.'" Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1161 (5th Cir. 1988) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. at 406 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 6362.

41.    Although all courts do not agree on a precise formulation, most rely on the same set of factors.  See In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997).  Those factors are:

-19-

(a) the size and complexity of the case;

(b) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

(c) the existence of good faith progress toward reorganization;

(d) the fact that the debtor is paying its bills as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f)  whether the debtor has made progress in negotiations with its creditors;

(g) the amount of time which has elapsed in the case;

(h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(i)  whether an unresolved contingency exists.

Id.; see also In re Central Jersey Airport Servs., LLC, 282 B.R. 176 (Bankr. D.N.J. 2002).


## 37 VENTURES' EXCLUSIVITY SHOULD BE TERMINATED

42.    Cause exists now to terminate 37 Ventures' exclusive period to file a plan. Any plan proposed by 37 Ventures is patently unconfirmable, because the Creditors will not support any plan in which Mr. Pikover plays a lead role.  Because 37 Ventures cannot confirm a plan without the Creditors' support, there is no reason to force the Creditors to wait, especially given the lack of transparency that leaves the Creditors with no assurance that the Investment Interests are being managed appropriately.

43.    37 Ventures' stated intention to use its assets to divert value to Mr. Pikover's investment in Larada, rather than to promptly repay 37 Ventures' own creditors, provides further cause to terminate 37 Ventures' exclusivity.   Additional cause is demonstrated by the many historical and recent disclosure concerns that leave the Creditors unwilling to allow Mr. Pikover to control how and when they will be repaid.

-20-

44.     The primary consideration in considering whether to terminate or reduce the exclusivity period is whether doing so will move the case forward, which is exactly what will happen if the Creditors are granted leave to propose the Creditors' Plan.

45.     On the other hand, the expressly articulated intent of Mr. Pikover and 37 Ventures is to propose a plan that, in addition to being unconfirmable, would merely delay and hinder the Creditors in recovering on their claims – plainly holding the Creditors' hostage to an unnecessary delay.

46.     If exclusivity is terminated, the Creditors' Plan would provide for the transfer of the Investment Interests into a trust, to be overseen by the Creditors.  The Creditors' Plan will provide for the monetization of the Investment Interests to be overseen by the Creditors' themselves, rather than by Mr. Pikover, in whom they have zero confidence. A Creditors Plan will provide for a faster and more efficient resolution of this case than 37 Ventures' proposed approach, which is to sit back and wait for years until the Investment Interests naturally monetize themselves.  That strategy may work for a long-term investment portfolio with no debt and an unlimited time horizon, but does not address the claims of creditors, as required by the Code.  Further, the Debtors' stated intention to propose a joint plan that would use the assets of one debtor (37 Ventures) to subsidize the money-losing operations of another (Larada) is a blatant abandonment of Mr. Pikover's fiduciary duty to the creditors of 37 Ventures.

47.     To the extent applicable, the factors articulated by the <u>Dow Corning</u> case all support termination of exclusivity here:

    a.  ***This case is nether large nor complex***. 37 Ventures only has two non-insider creditors, no operating business, and just a handful of passive investments. The only question is whether the Investment Interests will be efficiently monetized or if 37 Ventures will be permitted to string the Creditors along while hoping that natural liquidity events occur.

b.  ***No time is needed to permit the debtor to negotiate a plan and prepare adequate information.***  No additional time is needed because 37 Ventures only has two creditors who will not support any plan that leaves Mr. Pikover in control.  There is no question that 37 Ventures will not be able to confirm a plan, consensual or otherwise.

c.  ***37 Ventures can show no good faith progress toward reorganization.***  37 Ventures has made absolutely no progress toward developing a plan.  It has failed to disclose to creditors the most basic information about its assets (their value) and has continued to stonewall in the two months during which these cases have been pending.  The actions of Mr. Pikover and 37 Ventures demonstrate that they seek only to keep Mr. Pikover in control, all to the detriment of the Creditors.

d.  ***37 Ventures has no operations and thus cannot pay administrative obligations as they come due.***  With less than $7,000 in cash when it filed, and with zero operating cash flow, the 37 Ventures' estate diminishes every day.  But for the funds advanced to 37 Ventures by Mr. Pikover shortly before the filing to pay a retainer for its counsel, 37 Ventures would not even be able to use this bankruptcy to maintain its stall tactics against the Creditors.

e.  ***37 Ventures has no reasonable prospects for filing a viable plan.***  Under Code section 1129(a)(10), a plan cannot be confirmed unless at least one impaired class votes to accept it, without considering the votes of insiders.  Because the Creditors represent all of the non-insider claims against 37 Ventures (in both number and amount of claims), 37 Ventures cannot confirm a plan without their support, which 37 Ventures does not and will never have.

f.  ***37 Ventures has not made progress in negotiating with its creditors.***  The Creditors are the only holders of non-insider claims against 37 Ventures, and 37 Ventures has not made any progress or even a good-faith attempt to negotiate a plan that would be acceptable to the Creditors.  Indeed, in the more than two months that this case has been pending, 37 Ventures has barely broached with either of the Creditors the specifics of a plan.  All that 37 Ventures has done so far is to engage in an extended 'stall & delay' campaign to avoid providing its creditors with any information as to the value of the Investment Interests, while averring that the Creditors will somehow be paid in full.

g.  ***Sufficient time has elapsed to terminate exclusivity.***  Over two months have already passed without any progress being made, other than the suggestion of an objectionable and unconfirmable plan.  There is no reason to make the Creditors wait longer, especially without any transparency into the nature and value of the Investment Interests or whether such assets are being preserved or if action is needed to safeguard such assets.

West\294375091.4

h. ***37 Ventures has not requested an extension of exclusivity***. The eighth factor does not apply because 37 Ventures has not requested an extension of exclusivity.

i. ***No unresolved contingency exists***. The only "contingency" asserted by 37 Ventures relates to the calculation of certain fees and penalties with respect to Alignment's claim, which is not a material contingency for any purpose. There are no other contested matters, adversary proceedings or any other "contingencies" that need to be resolved.

48.    In addition to the foregoing, given 37 Ventures' stated intentions, it would be detrimental to the Creditors to wait for the expiration of the initial 120-day exclusivity period. The issue is not 37 Ventures' *willingness* to propose a plan – indeed, it has made clear that it intends to do so. The mere filing of a plan prior to the expiration of the first 120-day period, however, would only further extend the exclusivity period until 180-days after the Petition Date, thus forcing the Creditors to renew their request to terminate exclusivity. This would only cause additional delay and cause the Creditors to incur additional expense in opposing an objectionable and unconfirmable plan and would provide no benefit.

49.    As testified to at the 341 Meeting, 37 Ventures is merely a passive investment vehicle for Mr. Pikover's personal long-term investments. The suggested "plan" that 37 Ventures intends to propose shows that this – a "personal" investment vehicle -- is still how Mr. Pikover views 37 Ventures. Rather than seeking to promptly repay the Creditors, Mr. Pikover seeks to preserve the Investment Interests for his own long-term benefit, with the vague hope that at some point in the future some "natural liquidity events" will occur that will generate enough cash to not only fund Larada's reorganization, but also to repay the Creditors. But hope is not a plan, and there is simply no basis to believe that 37 Ventures, which according to Mr. Pikover's testimony at the 341 meeting has *never* generated any meaningful cash, will suddenly be able to produce enough cash to satisfy the Creditors' claims if the Court confirms its plan.

50.     Permitting the Creditors to file the Creditors' Plan will undeniably move this case forward.   The Creditors' Plan will provide for a straightforward and sensible monetization of the Investment Interests to provide a meaningful and expeditious recovery to creditors.   On the other hand, permitting 37 Ventures to push forward in promoting its own unconfirmable plan would only cause delay and unpaid administrative expenses while elevating the interests of Mr. Pikover over those of the Creditors.

**IV.**
**CONCLUSION**

For all the forgoing reasons, the Creditors respectfully request that the Court (a) grant the Motion and enter an order, in substantially the form attached as **Exhibit C** to the Goldberg Declaration, terminating 37 Ventures' exclusive period to file a chapter 11 plan; (b) grant the Creditors leave to file and seek confirmation of the Creditors' Plan; and (c) grant such other and further relief as the Court deems appropriate.

Dated:  June 1, 2021                           DLA PIPER LLP (US)

                                               */s/ Eric Goldberg*
                                               Eric Goldberg

                                               Attorneys for Alignment Debt Holdings 1,
                                               LLC, as Agent for Atmedia Investor II, LLC

Dated:  June 1, 2021                           O'Melveny & Myers LLP

                                               */s/ Steve Warren*
                                               Steve Warren

                                               Attorneys for Knight and Bishop, L.P.

West\294375091.4