GARY E. KLAUSNER (State Bar No. 69077)
EVE H. KARASIK (State Bar No. 155356)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: GEK@LNBYB.COM; EHK@LNBYB.COM; JSK@LNBYB.COM
Counsel for 37 Ventures, LLC,
Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**NORTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>37 VENTURES, LLC,<br><br>    Debtor and Debtor in Possession.<br><br>In re:<br><br>LARADA SCIENCES, INC.,<br><br>    Debtor and Debtor in Possession.<br><br>☐ Affects both Debtors<br><br>☒ Affects 37 Ventures, LLC only<br><br>☐ Affects Larada Sciences, Inc. only | Case No.: 9:21-bk-10261-DS<br>Jointly administered with: 9:21-bk-10269-DS (Larada Sciences, Inc.)<br>Chapter 11 Case<br><br>**STIPULATION REGARDING RETENTION OF IDISCOVERY SOLUTIONS PURSUANT TO 2004 STIPULATION ORDER**<br><br>[No Hearing Required] |

This stipulation (the "Stipulation") is entered into between and among Knight and Bishop, L.P. ("KB"), Alignment Debt Holdings 1, LLC, as agent for creditor Atmedia Investor II, LLC ("Alignment"), and debtor 37 Ventures, LLC ("37 Ventures," and collectively, the "Parties"), by and through their respective counsel of record, and is made with reference to the following facts and recitals:

**WHEREAS**, on May 26, 2021, KB and Alignment filed their *Joint Motion for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Examinations of Yuri Pikover and Claire Roberts, (II) Directing the Production of Documents, and (III) Authorizing the Issuance of Subpoenas* [ECF No. 129] (the "2004 Motion"), which included requests to compel the examination and production of documents identified on Exhibit A attached thereto (the "Document Requests");

**WHEREAS**, on July 12, 2021, KB and Alignment filed the *Stipulation Among Debtors, Knight and Bishop, L.P., and Alignment Debt Holdings 1, LLC for Protective Order* [ECF No. 203], which was lodged with the United States Bankruptcy Court for the Central District of California, Northern Division (the "Court") on July 13, 2021 [ECF No. 205], and approved by the Court on July 16, 2021 [ECF No. 211] (the "Protective Order Stipulation"), which addressed issues regarding the confidentiality of information to be provided related to the 2004 Motion;

**WHEREAS**, on August 18, 2021, KB and Alignment filed the *Joint Stipulation And [Proposed] Order For The Production Of Documents And Deposition Of Yuri Pikover* (the "2004 Stipulation") [ECF No. 245], which was approved by Court order entered on August 31, 2021 [ECF No. 259] (the "2004 Stipulation Order"), which addressed issues related to the scope and timing of discovery.  Pursuant to the Court approved 2004 Stipulation, the Parties agreed that "37 Ventures shall make available to a third party vendor (the "Discovery Vendor") all electronically stored information of 37 Ventures and Mr. Pikover . . . and shall produce documents maintained by 37 Ventures and Mr. Pikover subject to the . . . process" described therein. The 2004 Stipulation Order approved the Stipulation, which authorized 37 Ventures to engage a Discovery Vendor;

WHEREAS, on or around September 1, 2021, 37 Ventures agreed to retain iDiscovery Solutions ("IDS") as the Discovery Vender (as required by the 2004 Stipulation Order) in accordance with the retention agreement dated September 1, 2021, attached as **Exhibit "1"** hereto (the "IDS Agreement");

WHEREAS, given that 37 Ventures is authorized to engage a Discovery Vendor pursuant to the 2004 Stipulation and 2004 Stipulation Order, and a Discovery Vendor is not an estate professional pursuant to Section 327 of the Bankruptcy Code, the Parties believe that neither an application for 37 Ventures' retention of IDS ("Retention Application") nor a motion to compensate IDS outside of the ordinary course of business ("OCB Motion") is necessary or required;

Now, therefore, **IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned Parties that 37 Ventures may retain and compensate IDS as the Discovery Vendor pursuant to the 2004 Stipulation Order and the IDS Agreement, without the need to file a Retention Application or OCB Motion.

Dated: September 7, 2021        /s/ Marc Levinton
                                Attorney for Creditor Knight and Bishop, L.P.

Dated: September 8, 2021        /s/ _____
                                Attorney for Creditor Alignment Debt Holdings I, LLC, as Agent for Atmedia Investor II, LLC

Dated: September 8, 2021        /s/ Jeffrey S. Kwong
                                Attorney for Debtor 37 Ventures, LLC

# EXHIBIT "1"



September 1, 2021

Yuri Pikover, Managing Director                                          VIA EMAIL TO:
37 Ventures, LLC                                                         ypikover@gmail.com
365 E. Avenida De Los Arboles
Thousand Oaks, CA 91360

      Re:    *In re 37 Ventures, LLC and In re Larada Sciences, Inc., No. 9:21-bk-10261-DS and 9:21-bk-10269-DS (Bankr. CD Cal)*

Dear Mr. Pikover:

    We are pleased that you have selected iDiscovery Solutions ("iDS") to provide eDiscovery services. This engagement letter (this "Engagement") shall confirm that 37 Ventures, LLC ("Client") has engaged iDS to provide such services in accordance with the Terms and Conditions attached as Exhibit A, the Statement of Work attached as Exhibit B, and the Fee Schedule attached as Exhibit C (collectively, the "Services").

    iDS acknowledges that Client has retained iDS to assist Client and Client's counsel in this matter, Levene Neale Bender Yoo & Brill, LLP ("Firm"). For the convenience of all involved, Client has authorized Firm to communicate instructions to iDS about the nature and scope of the Services to be provided by iDS in this Engagement as further provided herein.

    If these terms are acceptable to you, please execute this Engagement and return a copy to the Project Lead (as identified in the Statement of Work) or to iDS via DocuSign.

    Sincerely,

iDISCOVERY SOLUTIONS

DocuSigned by:

*Daniel L. Regard, II*
75F280ED98744C3...

Daniel L. Regard, II, President and CEO



**info@idsinc.com** | **iDSINC.com** | **US: +1.800.813.4832** | **UK/EEA: +44 (0)20 8242 4130**

©2021 iDiscovery Solutions | All Rights Reserved

AGREED and ACCEPTED by Firm on behalf of itself and Client:

37 VENTURES, LLC

X *Yuri Pikover*
DocuSigned by: 7880F5DFC6424F8...

Yuri Pikover, Managing Director

Date: 9/2/2021

IDS.37Ventures_EngagementLtr_20210810_02

# EXHIBIT A

## Terms and Conditions

Except as modified in the Statement of Work and Exhibit B below, these Terms and Conditions apply to and form a part of the attached Engagement, and incorporate all capitalized terms defined in the Engagement and its Exhibits. iDS, Firm, and Client are collectively the "Parties".

### ARTICLE 1 – SERVICES

1.1     *Provision of Services*. iDS will provide the Services in accordance with these Terms and Conditions. Changes to the Costs (as defined below) and/or the scope of Services can be authorized by Firm in writing or via email, provided that the Responsible Party is obligated to pay for all such changes, even if not authorized in writing, if (a) the change in scope was requested by Firm or Client, or (b) iDS provides reasonable notice to Firm of the change in Costs, and Firm does not object to such change before the applicable Services are performed.

1.2     *Consulting and Expert Services*. The Project Lead's analysis shall be objective and independent, and not necessarily those of other employees of iDS. Prior to the submission or distribution of any statement describing any opinions of the Project Lead, the Project Lead shall be entitled to review such statement for accuracy. In any court proceeding, the Project Lead and/or iDS shall be entitled to object to requests by third parties to obtain information concerning material personal to the Project Lead, proprietary to iDS, or that is unrelated to the Engagement. Such objections may be required by existing confidentiality agreements or protective orders. iDS and the Project Lead shall use best efforts to protect Client's interests consistent with the need to protect the Project Lead's and/or iDS's personal and proprietary information and comply with all confidentiality obligations.

1.3     *Support Services*. If specific support is required to perform the Services that cannot reasonably be provided by iDS, iDS may employ or contract for additional support, provided that (a) such support does not increase the Costs, without Firm's written consent, and (b) all persons or entities providing such support shall comply with the confidentiality provisions of this Engagement.

### ARTICLE 2 – COMPENSATION AND PAYMENT

2.1     *Fee Schedule*. iDS's standard billing rates for hourly professional fees and expenses shall apply for Services subject to this Engagement ("Costs"), unless a separate pricing schedule is provided by iDS (a "Fee Schedule").

2.2     *Retainer*. iDS will hold the retainer identified in the Statement of Work, if any (the "Retainer") until it renders its final Invoice for the Engagement, at which time it will apply the Retainer to any outstanding balance due. Any portion of the Retainer not applied at the conclusion of the Engagement shall be returned to the Responsible Party within 30 days.

2.3     *Invoices*. iDS shall submit a monthly invoice of Costs (each, an "Invoice") to the Billing Contact. Invoices may be sent via electronic mail. Firm and/or the Client will review all Invoices upon receipt and will advise iDS of any objection to, or dispute with, the Costs or Services reflected in the Invoice within 30 days from the Billing Contact's receipt of the Invoice. All Costs are exclusive of any applicable property, excise, sales, use, or similar taxes, all of which are the responsibility of the Responsible Party.

2.4     *Payment of Invoices*. The Responsible Party shall pay the Invoices as set forth in Section E of the Statement of Work attached as Exhibit B hereto.

2.5     *Payment Instructions*. The Retainer and all Invoices shall be paid as follows:

Retainer and all payments by check to:

    iDiscovery Solutions
    3000 K Street NW, Suite 330
    Washington, DC 20007

All electronic payments:

    Bank:        Sandy Spring Bank
    Address:   17801 Georgia Avenue
                        Olney, MD 20832
    ABA#:       055001096
    For the benefit of iDiscovery Solutions
    Account#   1076942

2.6     *Estimates*. Any estimate of anticipated fees and expenses for the Engagement is based on the information available at the time it is made, and is not a maximum fee or a fixed price.

### ARTICLE 3 – INTELLECTUAL PROPERTY

3.1     *Intellectual Property*.

    (a) "iDS IP" includes all iDS proprietary and third party licensed software or applications, code (source and object code forms), functionality, customizations (and improvement thereto), tools, products, content, URLs, domain names, technology, system or network architecture, topology, scripts, user interfaces, "look and feel," trade secrets, copyright rights, trademarks, patent rights, know-how, inventions and rights of priority as recognized in any country or jurisdiction in the world. iDS IP remains the exclusive property of iDS or its licensors. iDS owns all rights, including, without limitation, all intellectual property rights to any iDS IP developed by iDS.

    (b) "Firm/Client IP" encompasses all information and materials that Firm or Client provides to iDS under this Engagement. Firm/Client IP remains the exclusive property of Firm or Client (as applicable). Firm/Client IP shall include any work product that iDS is paid to create under this Engagement, including any derivative work that incorporates Firm/Client IP, but excluding any derivative work with respect to iDS IP.

3.2    *Work Product*. The Services are being done for and under the direction of Firm and, accordingly, are part of Firm's work product, and all communications between the Parties in connection with such Services are confidential and privileged.

3.3    *End-User License*. iDS may provide Firm, Client, and/or their respective employees, contractors, and representatives (collectively, "authorized end-users") with access to proprietary or licensed online software (such as Relativity® or the *xIOT*® Platform) designed for, among other things, hosting, file review, searching, coding, work-flow management, document security, data organization, management, analysis and reporting (collectively, "Licensed Software") as part of the Services. iDS hereby grants to all authorized end-users a personal, non-exclusive, non-transferable, revocable, and limited end-user license to access and use such Licensed Software to the extent provided in the Engagement, as permitted by such licensors. iDS may suspend, terminate, or block access to all or any part of the Licensed Software if (a) iDS notifies Firm of a demonstrable violation of the terms of this Engagement (other than a violation of Section 3.4) and the violation is not remedied within 15 days of the Firm's receipt of such notice; (b) iDS reasonably determines that continued use of the Licensed Software will lead to corruption, loss, or a violation of the confidentiality, of Firm's, Client's, or a third party's information, or (c) iDS reasonably determines that Firm or Client has violated Section 3.4. Client acquires no intellectual property or other rights to such Licensed Software, or any derivatives thereof through use hereunder.

3.4    *Access and Use of Licensed Software*. Authorized end-users may assign their own password for purposes of accessing and using the Licensed Software. Each authorized end-user shall be responsible for maintaining the confidentiality and maintenance of all passwords. Firm and Client hereby accept full responsibility for, and shall be liable for, all access to the Licensed Software by their authorized end-users, and all expenses or damages incurred by iDS in maintaining the security of a password, including resetting a password or preventing unauthorized access. Firm and Client shall use reasonable efforts to prevent unauthorized access or use of the Licensed Software and shall immediately notify iDS of any unauthorized use or other breach of security. Firm and Client shall not: (a) disassemble, decompile or otherwise reverse engineer or create derivative works of the Licensed Software, or otherwise attempt to learn the source code, structure, algorithms or ideas underlying the Licensed Software; (b) provide access to the Licensed Software to third parties (except as expressly permitted herein); (c) copy or modify the Licensed Software; (d) remove any names, designations, trademarks or notices from the Licensed Software; or (e) allow any of their authorized end-users or any third party to do any of the foregoing.

3.5    *Firm/Client License*. Subject to Article 4, and solely for the purpose of this Engagement, Firm and/or Client hereby grants to iDS a royalty-free right to access, store, reproduce, display, handle, perform, transmit, test, or otherwise use all information and materials that Firm and/or Client provide to iDS. iDS shall not access, store, reproduce, display, handle, perform, transmit, test or otherwise use any electronically stored information ("ESI") or any other information provided by Firm or Client for any purpose other than to provide the Services. By providing information and materials to iDS, Firm or Client (as applicable) warrants that: (a) it has a good faith belief that iDS may access, store, reproduce, display, handle, perform, transmit, test or otherwise use such materials consistent with all applicable laws, regulations, and statutes, including but not limited to the Health Insurance Portability and Accountability Act of 1996 and the Gramm-Leach-Bliley Act; and (b) the provision of such information or materials does not conflict with or result in a breach or default of any term or provision of any agreement, obligation or duty to which Firm or Client is a party or is bound.

3.6    *Acceptance of Risk*. Firm and Client specifically accept the risk of loss to or corruption of any ESI that is the subject of the Services.

**ARTICLE 4 – CONFIDENTIAL INFORMATION**

4.1    *Confidential Information*. The Parties acknowledge that during the term of this Engagement each of them (the "Receiving Party") may come into possession of or become acquainted with certain confidential and/or proprietary information ("Confidential Information") of the other Party (the "Disclosing Party"), and that the receipt of such Confidential Information is necessary for the performance of the Services hereunder. As to iDS, Confidential Information shall include all iDS IP, business information, marketing and sales information, strategies, and business processes. As to Firm and Client, Confidential Information shall include all Firm/Client IP, all information and materials (including ESI) that Firm or Client provides to iDS, all documents or other materials that contain or are derivative of such information, and all deliverables, evidence and non-public information relating to the Engagement. As to all Parties, Confidential Information shall include the material terms of this Engagement, including the Fee Schedule, and all information not generally known to the public. Firm's or Client's delivery of Confidential Information to iDS does not operate as a waiver of any applicable statutory or common law privileges or protections. Confidential Information does not include information that is generally known to the public or is known by the Receiving Party before the information is delivered under this Engagement. Firm shall promptly notify and provide iDS with a copy of all protective orders and/or confidentiality agreements that govern information and materials that Firm or Client provides to iDS, and iDS shall comply with the terms of all protective orders and/or confidentiality agreements upon receipt thereof for as long as iDS possesses the subject information or materials.

4.2    *Disclosure and Use*. The Receiving Party shall only disclose the Disclosing Party's Confidential Information to its employees, independent contractors, subcontractors, attorneys, accountants, or agents to the extent that such individuals have a need to know for the purposes described in this Engagement, and the Receiving Party shall be responsible for such recipients' care and use of such Confidential Information. The Receiving Party shall treat such Confidential Information as strictly confidential and with the same or greater standard of care as it uses for its own confidential and proprietary information. Except as permitted by this Engagement, no Party will: (a) make any use of the other Party's Confidential Information for its own benefit; or (b) acquire any right in or assert any lien against the other Party's Confidential Information or permit any third party to do so. The Receiving Party will immediately notify the Disclosing Party in the event of any known disclosure, loss, or use of the Disclosing Party's Confidential Information in violation of this Engagement.

4.3    *Exceptions*. Notwithstanding Section 4.2, the Receiving Party may disclose the Disclosing Party's Confidential Information (a) upon the Disclosing Party's written consent; or (b) to the extent required by law or order of a court or governmental agency, provided that prior to such disclosure the Receiving Party must (i) notify the Disclosing Party immediately of the existence, terms, and circumstances of a request to disclose Confidential Information, (ii) permit the Disclosing Party the opportunity to seek a protective order and/or other appropriate remedy, or waive the Party's compliance with this Article; (iii) provide such cooperation as the Disclosing Party might reasonably request; and (iv) disclose only the Confidential Information that it is legally required to furnish.

### ARTICLE 5 – TERM AND TERMINATION

5.1    *Commencement and Term*. This Engagement shall commence upon full execution of the Engagement and continue until terminated by any Party, for any reason, upon 7 days prior written notice to the other Parties ("Termination").

5.2    *Disposition of Confidential Information*.

(a)  Upon Termination, Firm shall provide iDS written instructions on the disposition of all of Firm's and/or Client's Confidential Information in iDS's control. Upon request, iDS will send Firm the estimated Costs for such disposal. iDS shall follow Firm's instructions unless otherwise required by law, subpoena, court order or other legal hold, and the Responsible Party shall bear all reasonable costs of disposition as specified in the Fee Schedule. Notwithstanding the foregoing, iDS shall not be obligated to transfer or deliver any Confidential Information unless all undisputed Invoices have been paid. If Firm does not provide such written instructions within 60 days after a Termination, iDS may send Firm written notice of Firm's obligation to do so. If Firm does not provide such instructions within 30 days of receiving such notice, iDS may dispose of all applicable Confidential Information in a manner that complies with the confidentiality obligations of this Engagement. In such an event, Firm and Client waive all claims of liability that may be asserted against iDS for such disposal, unless such disposal results in the violation of this Engagement.

(b)  iDS may retain its case information related to this Engagement (such as generated reference and research materials) according to its internal retention schedule, provided that iDS will not retain any materials containing, referencing, or derived from Confidential Information without Firm's express written consent, which consent shall not be unreasonably withheld.

### ARTICLE 6 – REIMBURSEMENT AND LIABILITY

6.1    *Reimbursement for Access Costs.* Client acknowledges that iDS is relying on the Client's warranties set forth in Section 3.5 as a pre-condition for performing the Services, and that the scope of the Services and the applicable charges have been set based on such warranties being true. In the event that (i) any third party claims that Client lacked the authority or authorization to deliver any Confidential Information to iDS, or claims that Client's delivery of any Confidential Information to iDS, or iDS's possession or custody of such Confidential Information, is prohibited by law or any agreement, duty or obligation to which Client is a party or is bound; and (ii) iDS spends professional time and/or incurs legal, expert, or other expenses in responding to such claims; then such expenses shall be added to the Costs for the Services, and the Responsible Party shall pay such additional Costs when invoiced therefor.

6.2    *Reimbursement for Legal Costs*. Client acknowledges that, as a result of iDS's involvement in the bankruptcy proceedings for which Services are being provided, third parties (including creditors or other interested parties) may subpoena iDS or use other legal processes to obtain documents or testimony from iDS regarding the Services provided and/or the Confidential Information provided to iDS by Client. The professional time and/or legal expenses incurred by iDS in responding to such legal processes shall be added to the Costs for the Services, and the Responsible Party shall pay such additional Costs when invoiced therefor.

6.3    *Notification and Opportunity to Object.* In the event that iDS receives any third-party claim under Section 6.1, or any legal process under Section 6.2, iDS shall promptly notify the Firm. To the extent possible, iDS shall assist the Firm in responding to such claim or legal process, including through objections and motions to quash.

6.4    *Limitation on Liability*. The Parties shall not be liable to each other under this Engagement for any consequential, incidental, special or punitive damages; nor shall iDS be liable to Firm or Client, in any form, in excess of the Costs actually received by iDS.

## ARTICLE 7 – CONFLICTS AND OTHER iDS CLIENTS

7.1     *Determination of Conflicts*. iDS's determination of conflicts is based on the substance of the work performed as opposed to the parties involved. iDS may provide Services to any other party, including parties who have disputes with or interests adverse to Firm or Client, without notice to Firm; provided, however, that during this Engagement, iDS shall not provide Services to any other party relating to the subject matter of this Engagement as set forth in Exhibit B without Firm's and/or Client's written consent.

7.2     *Identity of Other Clients*. Firm shall not use the fact of Project Lead's or iDS's current or previous engagement in other matters as a means of enhancing or diminishing Project Lead's or iDS's credibility.

## ARTICLE 8 – GENERAL TERMS AND CONDITIONS

8.1     *Dispute Resolution*. Any controversy, dispute or claim of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of this Engagement shall exclusively be resolved by the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court").

8.2     *Choice of Law; Jurisdiction*. This Engagement shall be governed by the laws of the State of California.

8.3     *Costs of Enforcement*. The prevailing Party in any dispute hereunder shall be entitled to reasonable attorneys' fees and expenses incurred in arbitrating, appealing, and/or enforcing any judgment entered by the Bankruptcy Court.

8.4     *Entire Agreement; Amendments*. The Engagement, including all exhibits, constitutes the entire and final agreement between the Parties with respect to its subject matter, and supersedes all prior or contemporaneous written or verbal agreements and communications, and shall not be modified, or any of its terms waived, except by a written agreement signed by both Parties.

8.5     *Electronic Signatures.* The Parties agree that this Engagement may be electronically signed.  The Parties agree that the electronic signatures appearing on this Engagement are the same as handwritten signatures for the purpose of validity, enforceability and admissibility.

8.6     *Counterparts*. The Engagement may be executed in one or more counterparts, each of which will be deemed to be an original and all of which, when taken together, will constitute one and the same agreement. The exchange of copies or signature pages by facsimile or electronically shall constitute effective execution and delivery.

8.7     *Force Majeure*. No Party shall be liable for any delay or failure to meet its obligations pursuant to this Engagement due to circumstances beyond its reasonable control, including but not limited to any acts or omissions of any government or governmental authority, acts of terrorism or public enemy, war, riots, insurrection, civil commotion, delays in transportation or deliveries of supplies or materials, power loss, fire, flood, storm or other natural disaster, or any damage or delay which is a direct result of any such event.

8.8     *Authority to Bind Client*. Firm represents and warrants that it is authorized to bind Client to this Engagement.

**EXHIBIT B**

**Statement of Work**

## SECTION A – iDS CONTACTS

The "Project Lead" on this Engagement shall be:

Jim Vaughn
535 Anton Blvd., Suite 860
Costa Mesa, CA 92626
Email: jvaughn@idsinc.com

## SECTION B – FIRM/CLIENT CONTACTS

Firm's main point of contact shall be:

Gary Klausner, Partner
Levene Neale Bender Yoo & Brill, LLP
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Email: gek@lnbyb.com

Client's main point of contact and the "Billing Contact" shall be:

Yuri Pikover, Managing Director
37 Ventures, LLC
365 E. Avenida De Los Arboles
Thousand Oaks, CA 91360
Email: ypikover@gmail.com

Invoices shall be copied to Gary Klausner at gek@lnbyb.com, Jeffrey S. Kwong at jsk@lnbyb.com and Richard P. Steelman at rps@lnbyb.com.

## SECTION C – SERVICES TO BE PERFORMED

Client engages iDS to provide Services in connection with a Federal Rule of Bankruptcy Procedure 2004 production request by Knight and Bishop, LP and Alignment Debt Holdings, I, LLC (as agent for Atmedia Investor II, LLC) in the bankruptcy proceedings *In re 37 Ventures, LLC and In re Larada Sciences, Inc., No. 9:21-bk-10261-DS and 9:21-bk-10269-DS (Bankr. CD Cal)*. The Services provided by iDS shall include data collections, application of search terms and document production, as directed by Firm. iDS estimates the Costs associated with these Services as $10,000.

## SECTION D – RETAINER

A retainer of $4,000 is required, payable within ten days after execution of the Engagement. If the retainer is not paid, iDS reserves the right to suspend Services until it is received.

## SECTION E – INVOICING AND PAYMENT

For the purposes of this Engagement, Client shall be responsible for compensating iDS for Services provided as the "Responsible Party." It is agreed and understood that Client's payment for Services is contingent on approval by the Bankruptcy Court. Client shall be responsible for payment of Invoices only after approval by the Bankruptcy Court and only in the amounts approved by the Bankruptcy Court (the "Approved Invoices") and all timelines relating to payment of Approved Invoices shall begin to run upon approval of such Invoices by the Bankruptcy Court. Client shall make payment of Approved Invoices within 10 days of approval by the Bankruptcy Court. Client will assist IDS in the preparation of fee applications in the Bankruptcy Case, which shall be noticed to certain creditors and heard and considered by the Bankruptcy Court.

Project Lead's hourly fees are $525.00 for consulting and (if applicable) $525.00 for testifying. Project Lead will leverage down as appropriate and utilize other iDS employees for cost efficiencies. Services provided by other employees of iDS will be billed according to the Fee Schedule.

**SECTION F – ADDITIONAL AGREEMENTS**

None.

**EXHIBIT C**

**Fee Schedule**

## PROFESSIONAL SERVICES (Expert, Consulting & Project Support)

| Item (Description) | Price | Unit |
|---|---|---|
| Expert Testimony | $ 500 – $ 750 | Hour |
| Directors & Managing Directors | $ 435 – $ 750 | Hour |
| Consulting Managers | $ 365 – $ 395 | Hour |
| Senior Consultants | $ 295 – $ 345 | Hour |
| Consultants | $ 215 – $ 285 | Hour |
| Engagement Managers | $ 200 – $ 225 | Hour |

## DIGITAL FORENSICS

| Item (Description) | Price | Unit |
|---|---|---|
| **Collection** (Hourly) Includes all tasks related to collection including communications, chain of custody, execution of the collection, and validation. | $ 285 | Hour |
| **In Lab Collection** Includes all tasks related to collection including communications, chain of custody, execution of the collection, and validation. | $ 500 | HD or Device |
| **Remote Device Collections** (e.g., Computers, Smartphones, Tablets, etc.) Includes all tasks related to collection, 0.5 hours of project coordination, chain of custody, execution of the collection, and validation. | $ 750 | HD or Device |

## DISCOVERY SERVICES

### PROCESSING

| Item (Description) | Price | Unit |
|---|---|---|
| **Data Processing & ECA** (In) Includes deduplication (global or custodian), extraction of text and metadata, and application of search terms, date filters, etc. Upon request, iDS can make the text and metadata available to counsel via an ECA Workspace. Hourly rates may apply for iterative or multiple culling and search term reporting requests. | $ 25 | GB |
| **Promotion to Review in iDS Relativity** (Out) Includes the promotion of post-culled data into a review environment. | $ 125 | GB |
| OR | | |
| **All-in Discovery Services** Includes deduplication (global or custodian), extraction of text and metadata, OCR, data analytics (Brainspace), unlimited native productions AND project management.[1] | $ 95 | GB |

### PRODUCTION SERVICES[2] (as needed)

| Item (Description) | Price | Unit |
|---|---|---|
| **Production Services:** Technical Support & Production Includes preparing a document production, which may involve custom load file requirements and/or special handling requests. | $ 215 | Hour |

---

[1] This model requires a minimum of 500 GBs and 6 months hosting; maximum of 100 project management hours will be included.

[2] iDS requires a minimum of $500 per production request (volume). All fees associated with the production include per GB and/or per image apply towards the minimum fee. Media and/or shipping charges do not apply.

### RECURRING SERVICES (MONTHLY)

| Item (Description) | Price | Unit |
|---|---|---|
| Relativity & Brainspace Hosting | $ 12 | GB/Month |
| Relativity User | $ 85 | User/Month |
| RSA Security | $ 50 | User/Month |

### Additional Services (Optional)

| Item (Description) | Price | Unit |
|---|---|---|
| Endorsements: Bates Labeling & Designations | $ 0.01 | Image/Page |
| Imaging: TIFF or PDF | $ 0.01 | Image/Page |
| Support: Project Management and Consulting | $ 215 - $225 | Hour |

### MEDIA, HARDWARE & STORAGE

| Item (Description) | Price | Unit |
|---|---|---|
| Original Evidence Storage | $ 5 | GB/Month |
| Structured Data Storage | $ 5 | GB/Month |
| Near-Line Storage | $ 3 | GB/Month |
| Evidence Storage (Physical) | $ 25 | Item/Month |
| Flash Drive | $ 25 | Drive |
| Unencrypted Hard Drive (< 2TBs) | $ 100 | Drive |
| Unencrypted Hard Drive (> 2 TBs) | $ 150 | Drive |
| Encrypted Hard Drive | $ 250 | Drive |

### DATA DISPOSITION

| Item (Description) | Price | Unit |
|---|---|---|
| **Data Archive or Return** (Originals, Working Copies, Archives) *Shipping and media not included.* | $ 285 | Hour |
| **Standard Disposition** (Projects Under $25,000): Delete Only | $ 500 | Project |
| **Standard Disposition** (Projects Over $25,000): Delete Only | $ 1,000 | Project |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled **STIPULATION REGARDING RETENTION OF IDISCOVERY SOLUTIONS PURSUANT TO 2004 STIPULATION ORDER** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 8, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jacob Beiswenger    jbeiswenger@omm.com, jacob-beiswenger-5566@ecf.pacerpro.com;swarren@omm.com
- Ron Bender    rb@lnbyb.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Kenneth Hennesay    khennesay@allenmatkins.com, ncampos@allenmatkins.com
- Eve H Karasik    ehk@lnbyb.com
- Gary E Klausner    gek@lnbyb.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Jeffrey S Kwong    jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- Tania M Moyron    tania.moyron@dentons.com, malka.zeefe@dentons.com;kathryn.howard@dentons.com;derry.kalve@dentons.com;glenda.spratt@dentons.com
- Isabelle L Ord    isabelle.ord@dlapiper.com, 5902@ecf.pacerpro.com;san-francisco-bankrupcty-7677@ecf.pacerpro.com;isabelle-ord-7771@ecf.pacerpro.com;5902@ecf.pacerpro.com
- Brett Ramsaur    brett@ramsaurlaw.com, stacey@ramsaurlaw.com
- Kenneth N Russak    krussak@knrlaw.com, krussak@russaklaw.com
- James R Selth    jim@wsrlaw.net, jselth@yahoo.com;dairi@wsrlaw.net;vinnet@ecf.inforuptcy.com
- Steven C Sereboff    ssereboff@socalip.com
- David B Shemano    dshemano@shemanolaw.com
- Rachel P Stoian    stoian.rachel@dorsey.com, stell.laura@dorsey.com
- Derrick Talerico    dtalerico@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **September 8, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Deborah J. Saltzman
United States Bankruptcy Court
255 E. Temple Street, Suite 1634
Los Angeles, CA 90012

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                   **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 8, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **September 8, 2021** | Lisa Masse | /s/ Lisa Masse |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1.PROOF.SERVICE**